UNITED STATES BANKRUPTCY COURT	Return Date: July 7, 2010
EASTERN DISTRICT OF NEW YORK	2:30 P.M.
-----------------------------------------------------------x
In re:	Chapter 11

MARTENSE NEW YORK INC.,	Case No. 09-48910-cec

                            Debtor.
-----------------------------------------------------------x

## DEBTOR'S OPPOSITION TO MOTION OF NEW YORK COMMUNITY BANK FOR RELIEF FROM THE AUTOMATIC STAY AND MOTION OF UNITED STATES TRUSTEE FOR CONVERSION OR DISMISSAL OF THE CASE

**TO THE HONORABLE CARLA E. CRAIG,
UNITED STATES BANKRUPTCY JUDGE:**

      Martense New York, Inc. (the "Debtor") as and for its Opposition to the motion of New York Community Bank ("NYCB") seeking relief from the automatic stay, and the Motion of the United States Trustee for conversion or dismissal of this Chapter 11 case, represents and shows this Court as follows:

## PRELIMINARY STATEMENT

      1.     Although both motions reflect the level of frustration with the slow progress of this proceeding, no one has been more frustrated than the Debtor, which only, finally, obtained possession of its property from the State Court Receiver in early April, and still has not obtained a full and accurate accounting of the Receiver's administration of the rents.

      2.     However, since April, substantial progress has been made, including the installation of a competent managing agent to collect rents and oversee

the property, and the signing of an agreement with a third party, Baron Rentals, for the leasing of 18 of the apartments, thus giving the Debtor a 100% occupancy rate.

3.  Between the monies turned over by the Receiver and the rents collected by the Debtor, there is currently holding about $200,000, which can be used to pay adequate protection to NYCB while the Debtor puts together a plan of reorganization.

## BACKGROUND

4.  The Debtor owns a multi-family apartment building (the "Property") located at 61 Martense Street, Brooklyn, New York, containing sixty (60) residential units.

5.  In 2008, the Debtor became delinquent with respect to its mortgage obligations due to operating shortfalls and inconsistent rent collections. As a result, NYCB instituted a foreclosure action to recover a loan balance of $4,823,011.30 and thereafter refused to accept any further payments from the Debtor. As part of the foreclosure action, NYCB subsequently obtained appointment of a Receiver.

6.  On October 9, 2009, the Debtor filed for Chapter 11 protection, and negotiated a cash collateral stipulation with NYCB pursuant to which it was agreed that, *inter alia*:

    a.  The Receiver would return possession of the Property over to the Debtor, and provide a full accounting of the rents collected and monies disbursed;

    b.  The Debtor would collect all future rents and retain same, except for certain expenses permitted under a fixed budget; and

c. As adequate protection, NYCB would retain its lien in the same amount and priority as it had pre-petition, and the Debtor would commence paying any excess income over expenses to NYCB each month beginning on December 31, 2009.

7. That Stipulation was executed on January 19, 2009, and So Ordered by this Court on March 12, 2010. By its own terms, the Stipulation expired on April 1, 2010.

8. In fact, the Debtor did not regain possession of the Property until April, 2010. Since then, the Debtor was able to negotiate an agreement with Baron Rentals ("Baron") pursuant to which Baron has executed one year leases for the 18 vacant apartments at the Property, at $1,250 per month, which averages to slightly more than the Debtor was receiving in regular rent for similar apartments of the same size. This shifts any risk of non-payment or vacancies from the Debtor to Baron, and provides the Debtor with a current 100% occupancy rate, thereby stabilizing the Debtor's income at $62,784.23 per month.[1]

9. Moreover, the Receiver has turned over to counsel for the Debtor two checks, one in the amount of $80,000 and one in the amount of $10,567.51, representing net rents collected by the Receiver. These checks are being held in escrow by the Debtor's counsel.

10. The Receiver also turned over to the Debtor's counsel a series of uncashed checks which has been given to the Receiver by various tenants. These

---

[1] To the extent that it is necessary for the Debtor to seek Court approval of the agreement with Baron, motion papers will be filed shortly.

checks are being held without deposit pending a reconciliation of rent accounts, so as to avoid any waiver of rights with respect to any of the tenants who may have paid an incorrect amount, or missed a rent payment.

11. Unfortunately, the accounting supplied to date by the Receiver is not sufficiently detailed to permit the kind of reconciliation of past rent payments required by the Debtor. Efforts to obtain additional information are on-going.

12. Between the approximately $82,000[2] net rents collected directly by the Debtor since this Chapter 11 proceeding began, the $90,500 from the Receiver being held by counsel for the Debtor, and the $36,500 in uncashed rent checks, the Debtor has almost $200,000 available for making adequate protection payments to NYCB and funding a plan of reorganization.

## ARGUMENT

13. NYCB has now moved to lift the automatic stay under Section 362(d)(1) of the Bankruptcy Code for cause, and further alleging that the Debtor failed to commence interest payments, or to file a plan, within 90 days after filing the Chapter 11 petition as required under Section 362(d)(3). The primary "cause" asserted by NYCB is an alleged lack of adequate protection.

14. In addition, the United States Trustee has moved to convert or dismiss the case due to the Debtor's failure to file operating reports.

---

[2] This includes approximately $34,000 through May 31, 2010, and an additional $48,000 or so in net collections for June.

15. In fact, NYCB has been more than adequately protected from the outset of this case by the value of the Property, and, now that control of the Property has been returned to the Debtor, the interest payments required under Section 362(d)(3) can commence.

16. Moreover, the operating reports for the entire period from October 9, 2009 through May 31, 2010 are being filed simultaneously with these opposition papers, thus providing the Trustee, this Court and all creditors and parties in interest with the information to which they are entitled.

17. NYCB predicates its purported lack of adequate protection on the reduction in the Debtor's rent rolls from a high in 2006 of $741,514.44 to a low of $594,375 in 2008. From this 20% drop in revenue, NYCB postulates a 20% reduction in the value of the Property from $6,730,452.47 in 2006 to only $5,384,461.97 currently.

18. NYCB does not present any formal appraisal of the Property, nor indeed any other evidence to support its claim that the Property is worth less than the $4,823,911.30 NYCB was owed as of the default in its mortgage. This is woefully inadequate to meet the burden placed on NYCB by Section 362(g)(1) to demonstrate that the Debtor lacks equity in the Property.

19. Moreover, as noted above, the Debtor now has a monthly rent roll of $62,784.23, or $753,410.76, *more* than its 2006 receipts. Thus, using the sole basis proffered by NYCB for calculating the value of the Property, not only is NYCB fully protected, but the value of the Property has been increasing over time.

20. As noted in its Motion, NYCB is entitled to payments each month under Section 362(d)(3), representing interest at the non-default contract rate on the outstanding balance of the loan. In this case, with an interest rate of 5.875% as set in the Promissory Note, NYCB is entitled to approximately $24,450 per month. Predicated on the fact that the Debtor was out of possession until April, the Debtor submits that its obligation to pay adequate protection should not commence until April. The Debtor proposes to use the funds turned over by the Receiver to make a payment of $97,500 representing adequate protection for April, May, June and July, with additional payments on the 15th of each month thereafter.

21. It is respectfully submitted that Section 362(d)(3) was never intended to be a death sentence for single asset real estate debtors. As noted in Collier's, the purpose of this section is to:

> address perceived abuses in single asset real estate cases, in which debtors have attempted to delay mortgage foreclosures even when there is little chance that they can reorganize successfully.

3 Collier on Bankruptcy, ¶ 362.07[5][b] (15th ed. Revised 2006).

22. In fact, the legislative history to the 1994 amendments that added this section to the Code states that its purpose is

> to provide special circumstances under which creditors of a single asset real estate debtor **may** have the stay lifted if the debtor has not filed a 'feasible' reorganization plan with 90 days of filing, or has not commenced monthly payments to secured creditors. (emphasis added).

H.R.Rep. 103-835, 103 Cong.2d Sess., p.50, 1994 U.S.Code Cong. & Ad.News, p. 3340, 3359.

23. Given its stabilized rent rolls and that fact that it has finally regained possession of the Property, the Debtor submits that is has excellent prospects for a successful reorganization, despite the slow start arising from the delays in obtaining possession of the Property. Thus, the Debtor is not abusing Chapter 11, and now has the means to adequately protect NYCB as required by the Code. Therefore, it is respectfully submitted that any violation of Section 362(d)(3) by this Debtor should be deemed a technical breach precipitated by the delay in recovering control of the Property from the Receiver set in place by NYCB, and not as grounds to vacate the automatic stay.

24. Moreover, the Court is free to fashion a remedy other than vacating the stay, including modifying or conditioning the lifting of the stay on various future events. In the Matter of Global One LLC, 411 B.R. 524, 549 (Bankr. M.D.Ga. 2009; In re The Terraces Subdivision, LLC, 2007 WL 2220448 (Bankr. D.Alaska 2007); In re Planet 10, L.C., 213 B.R. 478 (Bankr. E.D.Va. 1997); In re Archway Apartments, Ltd., 206 B.R. 463, 464-65 (Bankr. M.D.Tenn. 1997).

25. Thus, the Debtor submits that the Court should permit the Debtor to utilize the monies collected to date to continue efforts to negotiate a plan, and condition the lifting of the stay accordingly.

26. For all of the same reasons, the Debtor respectfully submits that its efforts since regaining possession of the Property, and the filing of the missing operating reports, constitutes a sufficient of the Debtor's good faith efforts to justify denial of the motion of the U.S. Trustee at this time.

WHEREFORE, for all of the reasons set forth herein, the motions filed by NYCB and the U.S. Trustee should be denied, together with such other and further relief as is just and proper.

Dated: New York, New York
July 2, 2010

                                    GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
                                    Attorneys for the Debtor
                                    1501 Broadway, 22nd Floor
                                    New York, New York 10036
                                    (212) 221-5700

                                    By: /s/ J. Ted Donovan
                                         J. Ted Donovan, Esq.