```
 1                  UNITED STATES BANKRUPTCY COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3
   In re:                           .    Brooklyn, New York
 4                                  .    June 9, 2010
   MARTENSE NEW YORK, INC.,         .
 5                                  .    09-48910
           Debtor.                  .    Calendar Time:
 6 . . . . . . . . . . . . . . .    .    2:00 P.M.

 7

 8
       [5] ORDER SCHEDULING STATUS CONFERENCE FOR THE PURPOSE
 9        OF DETERMINING AN APPROPRIATE SCHEDULE FOR THE
                PROPER ADMINISTRATION OF THIS CASE
10

11
                   BEFORE HONORABLE CARLA E. CRAIG
12

13
   Attorney for United States
14 Trustee:                       U.S. DEPARTMENT OF JUSTICE
                                  OFFICE OF UNITED STATES TRUSTEE
15                                271 Cadman Plaza
                                  Suite 4529
16                                Brooklyn, New York  11201
                                  BY:  WILLIAM E. CURTIN, ESQ.
17
   Attorney for Debtor:           GOLDBERG, WEPRIN, FINKEL &
18                                GOLDSTEIN
                                  1501 Broadway
19                                New York, New York  10036
                                  BY:  NEAL ROSENBLOOM, ESQ.
20
   Attorney for New York
21 Community Bank:                LYNCH & ASSOCIATES
                                  462 Seventh Avenue
22                                New York, New York  10018
                                  BY:  GARY RAVERT, ESQ.
23

24

25
```

```
 1                                                                    2

 2

 3
Court Recorder Operator:      BERNADETTE TAYLOR
 4
Court Transcriber:            CATHERINE ALDRICH
 5                            COMPU-SCRIBE, INC.
                              2376 Cleveland Street
 6                            Bellmore, New York  11710

 7

 8

 9

10

11

12

13

14

15

16

17

18

19
Proceedings recorded by electronic sound recording,
20 transcript produced by transcription service.

21

22

23

24

25
```

1          THE CLERK:  Number 5 on the calendar.
2          Can we start with appearances, please?
3          MR. CURTIN:  William Curtin for the United States
4  Trustee.
5          MR. RAVERT:  Gary Ravert, of counsel to Lynch &
6  Associates, for New York Community Bank.
7          MR. ROSENBLOOM:  Neal Rosenbloom, Goldberg, Weprin,
8  Finkel & Goldstein, attorneys for the debtor.
9          THE COURT:  This is just a status conference, but
10 you've got a motion for stay relief on --
11         MR. ROSENBLOOM:  Yes, your Honor.
12         THE COURT:  -- that's coming up.
13         MR. ROSENBLOOM:  As a matter of fact, we just saw it
14 yesterday.  There has been a significant amount of
15 communication between myself and Mr. Lynch and I believe my
16 partner and Mr. Lynch.  I was somewhat surprised, but not
17 surprised to get the motion since we did take steps to
18 facilitate the termination of the receivership and to have the
19 monies on hand delivered to us.
20         After getting those monies delivered to us and
21 taking steps, the motion has attached to copies of letters
22 that I had sent to the tenants instructing them to start
23 paying rent to me.  I had hoped there was going to be some
24 dialogue between the bank and our office to try to work out a

                                                                     4

1  cash collateral stipulation, which is certainly something that
2  we would like to have accomplished prior to the hearing date
3  on the motion.
4            I can advise the Court that the debtor has recently
5  put in a managing agent who is running the property and is
6  trying earnestly to get the rents cleared up.  There are a
7  number of tenants who are residing under month to month
8  tenancies, tenants who under the Rent Stabilization laws are
9  entitled to have continuation leases and to have their rents
10 increased.  I know the managing agent is attending to that.
11           I can represent to your Honor that we do have a
12 substantial amount of money on hand.  I have held every check
13 that was given to us, and I continue to hold those checks, and
14 I was holding them in the hope of reaching some kind of
15 accommodation with the bank, which we'll earnestly try to
16 effect between now and the 7th.
17           THE COURT:  Well, there was a stip -- a stipulation
18 approved that authorized the use of cash collateral, but only
19 up to April 1st, right?
20           MR. ROSENBLOOM:  Right, and in point of fact, there
21 was no money that was turned over to us as of that time.
22           THE COURT:  So tell me what your strategy is with
23 this property.  What's your exit strategy, Mr. Rosenbloom?
24           MR. ROSENBLOOM:  Well, your Honor, we do believe

1  that there is equity in this property.
2          THE COURT:  Well, you've got -- you think the
3  property is worth $6,375,000, correct?
4          MR. ROSENBLOOM:  That is the amount that's reflected
5  in our petition, yes.
6          THE COURT:  And you have the New York Community Bank
7  claim is about $4,800 -- $4.8 million.  Excuse me.  4.8
8  million, correct?
9          MR. ROSENBLOOM:  Correct.
10         THE COURT:  And then you have 3 million of unsecured
11 claim?
12         MR. ROSENBLOOM:  Well, your Honor, for the most part
13 those are insider type claims that we do expect to be
14 subordinated.
15         THE COURT:  So what's the strategy then?
16         MR. ROSENBLOOM:  The strategy, your Honor, will be
17 either to renegotiate the mortgage or try to find some type of
18 replacement financing.
19         THE COURT:  All right.
20         MR. ROSENBLOOM:  We do have a significant amount of
21 money, as I said, that we're holding.
22         THE COURT:  That -- these are rents that you've been
23 able to collect since the property was turned over?
24         MR. ROSENBLOOM:  Yes, your Honor.  Yes.  We -- it's

6

1  a combination of money that was turned over to us by the
2  receiver and money that we have received from the tenants in
3  response to our letters requesting payment.
4           THE COURT:  Where are you with regard to your
5  monthly operating reports?
6           MR. ROSENBLOOM:  Your Honor, we have not filed any
7  operating reports because we've only recently had a managing
8  agent appointed, and the property was in the hands of the
9  receiver for a significant amount of time.
10          THE COURT:  So are you planning on filing operating
11 reports on a retroactive basis?
12          MR. ROSENBLOOM:  Yes.
13          THE COURT:  And when will that be?
14          MR. ROSENBLOOM:  Your Honor, I'll endeavor to have
15 that done certainly before the return date of the motion,
16 which is the 7th.
17          THE COURT:  The 7th of July?
18          MR. ROSENBLOOM:  Yes, ma'am.
19          MR. CURTIN:  Your Honor, we're filing a motion to
20 convert or dismiss returnable on the same date, on the July
21 7th date, so if it's not done by then we'll go forward on the
22 motion.
23          THE COURT:  Yes.
24          MR. CURTIN:  The operating reports are the major

1 ground for the motion. If your Honor will recall, at the last
2 I believe two status conferences, we did give the debtor some
3 leeway because there was the issue with the receiver, but now
4 --
5          THE COURT: The receiver's been out for a while.
6 He's been out --
7          MR. CURTIN: It's been a couple months.
8          THE COURT: -- since March.
9          MR. CURTIN: Yes, your Honor. So, as I said, we're
10 bringing the motion and --
11          THE COURT: Because that stipulation that --
12          MR. CURTIN: -- they'll either file them or they
13 won't.
14          THE COURT: The stip that I so ordered was in March,
15 March 12th.
16          MR. ROSENBLOOM: Correct, your Honor, but the
17 receiver did not deliver any property to us until the 31st of
18 March.
19          THE COURT: Still, this is June.
20          MR. ROSENBLOOM: Understand.
21          THE COURT: So what was the delay in getting a
22 managing agent, and who was collecting the rents until the
23 managing agent was in place?
24          MR. ROSENBLOOM: Until the managing agent was in

1  place, the rents were being sent to my office, and I hold all
2  of the rents in a separate folder.  I have not deposited those
3  checks.  I have negotiated those checks.  They are all being
4  held and were being held in the hope of reaching some kind of
5  an accommodation with the bank.
6             THE COURT:  Wouldn't you be better off having the
7  checks deposited so that at least you -- they are -- you know
8  that you've got the money there rather than -- and especially
9  if they're getting stale at this point.
10            MR. ROSENBLOOM:  Well --
11            THE COURT:  These are rent checks?  Give them to
12 somebody.  Put them in some kind of an account.
13            MR. ROSENBLOOM:  I can deposit them in a separate
14 segregated account.
15            THE COURT:  Well, what's the logic of just holding
16 the checks?  You're going to -- as time passes the likelihood
17 that you're going to, you know, be able to collect the funds
18 represented by the check declines I should think.
19            MR. ROSENBLOOM:  I don't know, your Honor, whether
20 in fact that's the case.  I know that the checks that were
21 delivered to us by the receiver were bank checks.  It's
22 amazing how many of these tenants pay by bank check and postal
23 money order.
24            THE COURT:  Is that right?

 1         MR. ROSENBLOOM:  Oh, yes.  Yes.
 2         THE COURT:  Still, I don't know why you wouldn't
 3  convert -- there's no -- you're not concerned about, you know,
 4  not wanting to accept rent for some reason, are you?
 5         MR. ROSENBLOOM:  Yes, I am.
 6         THE COURT:  Why is that?
 7         MR. ROSENBLOOM:  Because by depositing some of these
 8  -- by depositing these checks, I don't know what controversies
 9  there are with the tenants concerning who is in many of these
10  apartments.
11         THE COURT:  I see.
12         MR. ROSENBLOOM:  The names of the remitters of many
13  of these checks is different than the names --
14         THE COURT:  I see.
15         MR. ROSENBLOOM:  -- on the rent rolls, so there are
16  lots of --
17         THE COURT:  So this is --
18         MR. ROSENBLOOM:  -- waiver issues.
19         THE COURT:  This is something you want to give over
20  to the managing agent to let them -- that person deal with?
21         MR. ROSENBLOOM:  I have provided the managing agent
22  with a copy of the log that I have created showing the checks
23  that I have received during the time that I've been attempting
24  to collect the rents.

```
 1              THE COURT:  But meanwhile you've got a secured
 2   creditor who hasn't gotten paid and is seeking stay relief.
 3              MR. ROSENBLOOM:  And we have every interest to remit
 4   a significant amount of that money onto the secured creditor,
 5   and we've articulated that to Mr. Lynch.
 6              THE COURT:  Okay.  Anything that anyone needs to put
 7   on the record at this point?
 8              MR. RAVERT:  Your Honor, obviously -- Gary Ravert
 9   for New York Community Bank.
10              We did not come here today prepared to pre-argue the
11   motion to dismiss.  We have a return date.  The objection
12   deadline hasn't even passed yet, but I think this dialogue
13   speaks to many of the issues that we raised in the motion, and
14   why we think the relief is appropriate.
15              THE COURT:  So I'll see you back here then on the
16   return date of the motion, which is --
17              MR. ROSENBLOOM:  July 7th at 2:30, your Honor.
18              THE COURT:  July 7th at 2:30.
19              MR. CURTIN:  And your Honor, we can use that as a
20   return date for our motion also?
21              THE COURT:  Yes.  You may do that.
22
23                    *          *          *
24
25                        **CERTIFICATION**
```

```
                                                                11
1
2  I, Catherine Aldrich, certify that the foregoing is a correct
3  transcript from the electronic sound recordings of the
4  proceedings in the above-entitled matter.
5

    _____         September 22, 2008
6
7          Catherine Aldrich
```