UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

```
--------------------------------X
                                :
In re:                          :    09-48910
                                :
     MARTENSE NEW YORK,         :    271 Cadman Plaza East
                                :    Brooklyn, New York
                   Debtor.      :
--------------------------------X    August 18, 2010
```

TRANSCRIPT OF HEARING ON ORDER SCHEDULING STATUS CONFERENCE;
MOTION TO APPROVE LEASE; AND MOTION FOR RELIEF FROM STAY
BEFORE THE HONORABLE CARLA E. CRAIG
UNITED STATES CHIEF BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:              NEAL M. ROSENBLOOM, ESQ.
                             Goldberg, Weprin, Finkel,
                              Goldstein, LLP
                             1501 Broadway
                             New York, NY 10036

For NY Community Bank:       GARY O. RAVERT, ESQ.
                             Lynch & Associates, of counsel
                             462 7th Avenue, 12th Floor
                             New York, NY 10018

For the US Trustee:          ALICIA LEONHARD, ESQ.
                             United States Department of Justice
                             271 Cadman Plaza East, Suite 4529
                             Brooklyn, NY 11201




Court Transcriber:           MARY GRECO
                             TypeWrite Word Processing Service
                             211 N. Milton Road
                             Saratoga Springs, New York  12866

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

1      THE CLERK:  Number 1 on the calendar, 1, 2 and 3 on

2 the calendar, <u>Martense New York</u>.  Can we have appearances,

3 please?

4      MR. ROSENBLOOM:  Neal Rosenbloom; Goldberg, Weprin,

5 Finkel, Goldstein, attorneys for the debtors.

6      MR. RAVERT:  Gary Ravert of counsel to Lynch and

7 Associates for New York Community Bank.

8      MS. LEONHARD:  Good afternoon, Your Honor.  Alicia

9 Leonhard for the United States Trustee.

10      MR. ROSENBLOOM:  Your Honor, there are several

11 matters that are on the Court's calendar and if I can just

12 quickly give Your Honor an update on what's happened since

13 we were last here on the 7th of July?  When we were here at

14 that time Your Honor had made certain directions to us to

15 begin making adequate protection payments to the bank based

16 upon the interest, the contract interest rate of the

17 mortgage.

18      THE COURT:  And to pay the taxes.

19      MR. ROSENBLOOM:  And to pay real estate taxes.  We

20 have remitted those adequate protection payments to the

21 mortgagee through and including the period of August of this

22 year and we had searched the city's records and unbeknownst to

23 us at the time we were here on the 7th it appears that the bank

24 had in fact paid the real estate taxes which fell due on July

25 1.  So what we did was we sent the bank a check for the amount

which they had advanced and paid to the city to in effect reimburse it.  That complied with the spirit of Your Honor's direction.

Your Honor, when we were also last here the Court indicated that it wanted to see a copy of the lease which my client had entered into with Barron Rentals.  We brought on a motion to approve that lease which really puts the building in good shape.  We attached to that motion a copy of the underlying lease agreement.  We did receive -- and we served the motion on all creditors and parties in interest.  We received one objection from the bank inquiring whether Barron Rentals was an insider.  We had filed a reply to the bank's opposition and I believe that reply has satisfied the concerns which were set forth within the bank's opposition.  In our mind clearly Barron is not an insider as that term is defined within the Bankruptcy Code.

THE COURT:  Well, is there any connection whatsoever?

MR. ROSENBLOOM:  Not other than what is described in my reply which is that Barron has served as a broker in other buildings which are owned by the principal.  They have no ongoing business relationship or joint venture arrangement or anything of that sort.  They're not equity holders in each other's businesses.  In point of fact, the licensing requirements of the State of New York require that all stockholders of a real estate brokerage company be disclosed.

Mr. Lynch's declaration has attached to it the information on

Barron which reflects clearly that none of the debtor's

principals are set forth either as a salesperson or as an

equity holder.

THE COURT:  I had asked if you could please provide

me with a description of how you're going to get -- what is

your exit strategy from this bankruptcy?

MR. ROSENBLOOM:  Well, Your Honor, it's a little

premature for us at this point to develop an exit strategy.  We

are working on it.  We are --

THE COURT:  Well, how much do you have in the way of

arrears?

MR. ROSENBLOOM:  The arrears that are owed to the

bank are substantial.  It would seem that we are going to have

to obtain some form of replacement financing.  Clearly, the

bank has indicated that it has no intention to allow for its

mortgage to be restructured with the existing ownership of the

debtor.  My prayer, Your Honor, is that we be -- that the

adequate protection payments that we have tendered to date

continue for the months of September and October and we would

hope to have an exit strategy when we are next before Your

Honor in November.

THE COURT:  This case has been pending since April;

correct?

MR. ROSENBLOOM:  No, Your Honor.  I think that the

1    case has been pending longer than that.

2              THE COURT:  Since January.  Since October.

3              MR. ROSENBLOOM:  We did not get possession of

4    property back.  We did not get possession of the property back

5    as a practical matter until October.  There was a receiver --

6    I'm sorry, until April.  There was a receiver here.

7              THE COURT:  Do you have a fix on the value of the

8    property?

9              MR. ROSENBLOOM:  We believe that the value of the

10   property is in excess of the amount that's owed to the bank.  I

11   think that our schedules have the property listed at $6

12   million.

13             THE COURT:  Well, I know that you have it scheduled

14   over $6 million based upon the sales price or the price that it

15   was paid for, the real property, in 2006.

16             MR. ROSENBLOOM:  That's correct, that's correct.  Our

17   rents, Your Honor, our rent role now is greater than it was

18   when we acquired the property in 2006.

19             THE COURT:  I'm troubled, I have to say, I'm troubled

20   by the fact that you don't even have like the outline of an

21   exit strategy for me here today.  I mean there are a lot of

22   things you could -- you have unsecured debt other than insiders

23   of about $100,000.00?  Am I right about that?

24             MR. ROSENBLOOM:  I believe that's correct, Your

25   Honor.

1          THE COURT:  Okay.  I mean there are things that you

2    could do with the secured debt if you have an unsecured class

3    that is separate from and that's not dominated by deficiency

4    claims, so I don't understand why there isn't some idea about

5    how you're going to get out of this situation.  We're coming up

6    on the one year anniversary of this bankruptcy.

7          MR. ROSENBLOOM:  Understood.  We have not been in

8    possession of this property until --

9          THE COURT:  Whose fault is that?  You didn't pursue

10   that until April.

11         MR. ROSENBLOOM:  That's not --

12         THE COURT:  Was there a motion made?

13         MR. ROSENBLOOM:  That's not fully correct.  No, Your

14   Honor, there was a stipulation that was pending for a lengthy

15   period of time and which was so ordered by the Court several

16   months after it was presented.  There were some questions that

17   Your Honor asked to have clarified at the last hearing with

18   respect to that stipulation.  However, there was protracted

19   delay in getting that stipulation so ordered.

20         We have finally put the building in shape where we

21   believe we can start shopping this to develop an exit strategy

22   and try to attract new equity investors or new sources of

23   financing.

24         THE COURT:  What will the rent roll be after,

25   assuming that this arrangement -- it will be a little bit over

1   $62,000.00 a month; correct?

2        MR. ROSENBLOOM: Right. It's set forth within -- it

3 is set forth within our papers. It's set forth within our

4 opposition to the bank's motion. The rent roll, if Your Honor

5 would just give me one second to find it --

6        THE COURT: It's about $62,000.00.

7        MR. ROSENBLOOM: $62,700.00, Your Honor.

8        THE COURT: Is there an updated operating report

9 here?

10        MR. ROSENBLOOM: The last operating report which we

11 filed was for the month of May.

12        THE COURT: So what are the operating costs for this

13 building?

14        MR. ROSENBLOOM: As I stand here, Your Honor, I

15 cannot outline the operating costs other than the semiannual

16 real estate taxes which I know were paid to the bank which

17 amount to $56,000.00.

18        THE COURT: The May operating report only shows -- it

19 shows one disbursement and that's for the US Trustee. That is

20 not that informative. Am I missing something here?

21        MR. ROSENBLOOM: We should, Your Honor, now be in a

22 position where we can start filing more detailed operating

23 reports. We do have a managing agent that's managing the

24 property. As I said, things are now back to a fairly normal

25 kilter. Rents are being -- there was confusion with the

1    tenants as to where rents were supposed to be paid but --

2          THE COURT:  What's the amount of the monthly payment

3    to New York Community Bank?

4          MR. ROSENBLOOM:  $24,450.00.

5          THE COURT:  Are there rents, significant rent arrears

6    on the apartment at this point?  Are they all paying?

7          MR. ROSENBLOOM:  We believe, Your Honor, that -- it's

8    a complex -- it's a simple question with a complex answer.  I

9    believe that the tenants are now paying rents to the managing

10   agent.  At one point they were making payments to the receiver.

11   At one point they were making payments to the receiver and to

12   me.  At that same point they were also making payments to the

13   debtor and later to its managing agent.  There are no longer

14   any payments going to anybody other than to the debtor and its

15   managing agent.

16         THE COURT:  Okay.  Is there anything else that you

17   want to put on the record?

18         MR. ROSENBLOOM:  No, Your Honor.

19         MS. LEONHARD:  Yes, Your Honor, good afternoon.

20   Alicia Leonhard for the record.

21         Your Honor, I think it's of major concern that the

22   debtor is a month late on its June operating report especially

23   since now the debtor is fully in possession and we came here

24   today not knowing whether the adequate protection payments were

25   made.  Counsel did represent they did.  But I think this is

1 crucial now for the debtor to get that June operating report in

2 immediately, and July is due on Friday. So I think it's

3 essential for us to know where this case is going financially.

4      THE COURT: Right. I don't think the debtor really –

5 – I'm not sensing that the debtor really has a handle on where

6 the case is going financially yet.

7      MS. LEONHARD: No, I think that's right, but I think

8 operating reports would go, at least give us an idea of what

9 the cash flow is.

10      THE COURT: Let's turn, shall we, to your motion to

11 approve the contract, your lease agreement that you're entering

12 into with Barron. So the idea of this transaction is that

13 Barron is taking risks on the occupants of the building paying

14 to the debtor, but then the debtor is taking the risk of Barron

15 being able to pay.

16      MR. ROSENBLOOM: That's correct, Your Honor. We

17 think that that's a much better risk than dealing with 18

18 tenants. Barron has been in business for a lengthy period of

19 time. They have a website. They specialize in finding

20 placement for city agencies in apartments. My client's

21 experiences with Barron in the past have been uniformly

22 favorable.

23      THE COURT: Do we have any kind of financial

24 information about them?

25      MR. ROSENBLOOM: I do not have any financial

1  information about them, Your Honor, no.

2         THE COURT:  The apartments that Barron is going to

3  take over are currently vacant; correct?

4         MR. ROSENBLOOM:  That's correct, they are.

5         THE COURT:  So the rent would start for what,

6  September or --

7         MR. ROSENBLOOM:  The rent has begun.

8         THE COURT:  On August 1?

9         MR. ROSENBLOOM:  The rent began on July 1, Your

10  Honor.

11         THE COURT:  July 1.

12         MR. ROSENBLOOM:  This was a transaction that took

13  place immediately before our last hearing on the 7th.

14         THE COURT:  So should I be asking for some more

15  information about Barron to understand whether in fact since

16  you're putting a lot of eggs in one basket if they are in fact

17  going to be good for this?  Because, you know, you won't have,

18  the debtor won't have recourse to the underlying tenants, will

19  they?

20         MR. ROSENBLOOM:  No, Your Honor.  We will not have

21  recourse to the underlying tenants.  By the way, in my reply I

22  did point out that Mr. Barron, Mr. Yisroel Barron,  is

23  agreeable to giving the debtor a good guy guarantee.  So he's

24  certainly prepared to stand behind the lease to that effect.

25         Also, Your Honor, the lease itself requires that

1  before surrendering any apartment back to the debtor, Barron is

2  required to give the debtor four months notice.  So I think

3  that that provides us with a certain degree of comfort and

4  security that we would not otherwise have.

5          THE COURT:  So Barron can surrender apartments back

6  on an apartment by apartment basis on four months notice?

7          MR. ROSENBLOOM:  That's correct.

8          THE COURT:  If they default in their obligations with

9  respect to any one apartment, does that trigger any rights on

10 the part of the debtor with respect to other apartments?

11         MR. ROSENBLOOM:  Yes, yes.  As a matter of fact the

12 lease clearly provides that a default in one apartment triggers

13 a default on all.

14         THE COURT:  Okay.  I'll hear from New York Community

15 Bank.

16         MR. RAVERT:  Good afternoon, Your Honor.  There's a

17 lot of water under the bridge already today.  Many things have

18 been said, so I'm going to try to back up a little bit.  I

19 didn't want to interrupt his presentation.

20         We have obtained an appraisal.  It shows that New

21 York Community Bank is under water by approximately $1 million

22 especially when you take into account taxes that have not been

23 paid, in other words, the January 2010 taxes.  Emergency

24 repairs upon which a lien likely has arisen and would trump our

25 lien.  If it's okay with the Court I would like to give Your

1  Honor a copy of this.  I have copies for the other as well.  We

2  were directed to provide an appraisal.  We've done so.

3          THE COURT:  Well, I don't think that I'm going to be

4  considering reading this appraisal right now.

5          MR. RAVERT:  That's fine, but I would like to submit

6  it as evidence of the value of the property, that's all.

7          THE COURT:  Well, if you want to have an evidentiary

8  hearing on -- if that's where you're heading toward an

9  evidentiary hearing on relief from stay, I think you'd need to

10 give the debtor a meaningful opportunity to examine the

11 appraisal report.

12         MR. RAVERT:  Your Honor, we have attached numerous

13 documents to our motion and we don't necessarily think that

14 there is any issue, contested issue of fact.  If the debtor

15 believes that it needs to contest the appraisal, I suppose it

16 has the right to do so.

17         THE COURT:  You're saying that you think the debtor

18 agrees with your valuation of the property?

19         MR. RAVERT:  I don't know, Your Honor.  Mr.

20 Rosenbloom has --

21         THE COURT:  But why do you think there's no contested

22 issue of fact?

23         MR. RAVERT:  As of right now there's no contested

24 issue of fact.  If he receives the appraisal and he's going to

25 contest it, then we may need an evidentiary hearing.  You may

1  be right about that.

2          THE COURT:  So you were thinking you were going to

3  give Mr. Rosenbloom the appraisal and ask him do you contest

4  this?

5          MR. RAVERT:  No, Your Honor.  At the last hearing

6  Your Honor directed us to bring in proof of value of the

7  property and we're responding to that request.

8          THE COURT:  Well, only if you -- I didn't tell you to

9  do anything but if you want me to find that you're under-

10 secured, then you have to provide some proof of that.  I didn't

11 tell you to go get an appraisal on the property.  I just simply

12 declined to accept your assumptions about value and where value

13 has gone --

14         MR. RAVERT:  Right.

15         THE COURT:   -- as a basis for concluding that there's

16 a lack of equity in the property.

17         So if you're here today and you got the appraisal

18 because you want to pursue your lift stay motion based upon the

19 belief -- based upon grounds of lack of equity in the property

20 and an ability to confirm a plan within a reasonable time, then

21 I don't think that you can in fairness ask Mr. Rosenbloom, you

22 know, hand the appraisal to me and to Mr. Rosenbloom and expect

23 to go forward with your presentation of evidence today.  Well,

24 I guess you don't have an appraiser with you to testify anyway,

25 so --

1    MR. RAVERT:  No, Your Honor, we don't.

2    THE COURT:  -- so we wouldn't be going down that

3  route.

4    MR. RAVERT:  No, we wouldn't.  It was really to be

5  responsive to the discussion on the record.

6    THE COURT:  Well okay, I appreciate that.  That is

7  useful information and I guess that's probably helpful to all

8  of us to see what a professional has assessed the value as on a

9  current basis.

10    MR. RAVERT:  May I share the appraisal with the Court

11  and Mr. Rosenbloom?

12    THE COURT:  Sure.

13             [Pause in proceedings.]

14    MR. RAVERT:  Your Honor, just to continue, you also

15  recently were speaking about the debtor's application to enter

16  into the lease transaction.  We accept counsel's

17  representations that there's no relationship.  It's not just a

18  stockholder ownership relationship there and I assume when he

19  says there were no relationships he means it is strictly an

20  arm's length relationship and that there are no contractual

21  arrangements either.

22    THE COURT:  Is that correct?

23    MR. ROSENBLOOM:  It is an arm's length relationship,

24  Your Honor, and I don't believe that there are any -- I don't

25  understand what counsel means as any contractual relationships.

1   There's clearly a contractual relationship in that there's a

2   lease.  There were other contractual relationships in the past

3   which I indicated in the papers where Barron has served as a

4   broker to bring tenants into other buildings, but they're arm's

5   length transactions.

6           MR. RAVERT:  So as far as the first of our two points

7   in our objection is concerned I believe that that addresses it.

8   I think it's a clear statement.

9           As far as the second point goes, we know nothing

10  about the principal behind Barron.  It's merely another name

11  and a person who is willing to give a guarantee of the

12  obligations.  So I just don't think that that addresses our

13  concerns.  Obviously, we stand here today on April [sic] 18th

14  and the case was commenced in October.  You know, we first

15  raised the issue of the requirements of Sare [Ph.] in our

16  pleading that was filed on June 3rd.  So even if you take the

17  debtor's argument that they didn't have control over the estate

18  until March of 2010, you're still talking about five, six

19  months ago and there's no end in sight.

20          THE COURT:  But they're paying your interest and they

21  reimbursed you for the taxes.

22          MR. RAVERT:  Absolutely, Your Honor.  We certainly

23  appreciate that.

24          THE COURT:  Well, doesn't that satisfy the

25  requirements of Sare?

1          MR. RAVERT:  Well, I think that --

2          THE COURT:  As long as there's no other -- well, it

3     satisfies the requirements on the face of it.  You may have

4     other grounds to get stay relief, I don't know.  But in terms

5     of automatic stay relief under D3 I think that would satisfy

6     them.

7          MR. RAVERT:  D3, right.  I think if that had happened

8     within 90 days, yes, Your Honor, it would have satisfied

9     without question, provided the payments were adequate.  It

10    didn't happen within 90 days.  In light of the appraisal I

11    don't think that the payments are adequate.  They're merely at

12    the contractual rate and not at the default rate in this case.

13    It's very high.  It's certainly not a 24.99% rate.  It's barely

14    over 10.

15         But perhaps if they were paying at the default rate

16    during that period that would have been a different issue.  But

17    either way, we haven't been adequately protected I believe

18    since the petition date and certainly not within 90 days.  So

19    we still think it falls short and there is no end in sight.

20    That's what it appears as of right now.

21         THE COURT:  Well, it seems to me as long as -- I

22    don't know why you think you're entitled to more if you're

23    under water.  I think as I read, as I understand Timbers once

24    you're under -- if you're under-secured all you're entitled to

25    frankly is whatever is needed to prevent further erosion of

1  your interest in the property.

2          MR. RAVERT:  Your Honor, I think we discussed a

3  little bit last time that there were emergency repairs that the

4  city continued to make and that those liens may be trumping

5  ours.

6          THE COURT:  Has that happened since the petition

7  date?

8          MR. RAVERT:  I believe that the most recent emergency

9  repairs were early 2010.  I can submit something to the Court

10 and to counsel to indicate specifically what has been done.  My

11 recollection was that it was in March 2010 approximately but I

12 don't know off the top of my head.

13         THE COURT:  I don't think this is a record on which I

14 would be able to make a finding that there are other liens that

15 have attached to the property that trump yours.  The taxes we

16 know would come ahead of you.  They've been paid or you've been

17 reimbursed for that.

18         MR. RAVERT:  Well, I think that part of preventing a

19 further decline of the property certainly would involve the

20 debtor not just making the adequate protection payments but

21 also properly maintaining the property by making these

22 emergency repairs that the city otherwise steps in to do.

23         THE COURT:  Is there some reason to think they're not

24 being made?

25         MR. RAVERT:  Your Honor, I don't think that there are

1   funds in the estate to be making these repairs and counsel can

2   say otherwise.  But my understanding of the estate's financial

3   condition is that they're not being made presently.

4           THE COURT:  I mean do we know what repairs need to be

5   made?  I don't have a factual record here that would -- you're

6   not telling me what needs to be paid and isn't being paid, just

7   that there may be emergency repairs that need to be made and

8   you think that the debtor doesn't have enough money to make

9   them.  So I don't see how that's a record on which I could make

10  a finding that would justify an automatic termination of the

11  stay.

12          MR. RAVERT:  That's fine, Your Honor.

13          THE COURT:  Now, it may be that there's no equity in

14  the property and no prospect of reorganization but that would

15  have to be shown.

16          MR. RAVERT:  Well, I think that at the last hearing

17  Your Honor asked them to come back with a clear and specific

18  plan for how they intended to exit Chapter 11.

19          THE COURT:  And I haven't heard that.

20          MR. RAVERT:  Obviously we're very sensitive to the

21  timing.  You know, we've been attempting to foreclose on this

22  interest and protect it and prevent further decline for, you

23  know, coming up on a year and I think what we're hearing today

24  is that they would like another minimum two and a half months

25  to formulate the plan, to formulate a plan.  I just don't think

1  that New York Community Bank should be asked to wait any

2  longer.  You know, we've protected our interests --

3           THE COURT:  What would you like me to do?

4           MR. RAVERT:  Well, I think there's a couple of

5  options.  Certainly lifting the stay immediately is one option

6  and --

7           THE COURT:  What's one option?

8           MR. RAVERT:  To lift the automatic stay immediately.

9  That is one option and that's the relief that we sought in the

10 motion.  You know, we believe that they --

11          THE COURT:  Based upon --

12          MR. RAVERT:  Based upon the fact that within --

13          THE COURT:  -- 362(d)(3)?

14          MR. RAVERT:  Well, based on the fact that 362(d)(3)

15 says that within 90 days of the filing the debtor shall -- and

16 then provides either file a plan of reorganization reasonably

17 capable of being confirmed or make adequate protection

18 payments.  Not only did they not do it in 90 days, they didn't

19 do it in 180.  They haven't even done it in 240 days.

20          THE COURT:  But they've been making the adequate

21 protection payments.

22          MR. RAVERT:  Now they are, Your Honor.  All those

23 payments came in since Your Honor directed them to make it.

24          THE COURT:  Right.

25          MR. RAVERT:  So I appreciate that.

1          THE COURT:  Right.  I would expect to continue that.

2          MR. RAVERT:  Right.  But in terms of the strict

3    reading of the code, I believe that the code says that the

4    debtor shall and it did not.  So that would be our main

5    argument.  And then certainly if the Court saw otherwise then

6    we would argue that we're not adequately protected and we've

7    made that argument already and the payments have begun.

8          THE COURT:  Right.

9          MR. RAVERT:  So alternatively, Your Honor, I think

10   that this Court could, to the extent that this Court is

11   inclined to any further extension of the stay or grant of time

12   to the debtors that the Court can give certain drop dead dates

13   by which the stay is lifted if the plan or the adequate

14   protection payments don't continue just so that we don't have

15   the case going forward on hopes and dreams because again, you

16   specifically directed them to come back with a clear and

17   specific exit strategy today.  They don't have it.  And what

18   I'm hearing is that we hope to have it by October 30th and I

19   just think that is way beyond what the code would have

20   tolerated given the Sare requirements.

21         THE COURT:  Well, would you like me to set your

22   motion for stay relief down for a hearing so we can establish

23   that there's a lack of equity in the property and the debtor

24   will then have to come forward and show a prospect for

25   reorganization within a reasonable time?

1    MR. RAVERT:  Yes, Your Honor.  I think that probably

2  would be appropriate.

3    THE COURT:  So I'll give you a date in September for

4  that.

5    MR. ROSENBLOOM:  Your Honor, my prayer for relief was

6  that we'd be -- that the status quo be maintained through the

7  month of October.  September is problematic.  My clients are

8  Orthodox Jews.  All of the Jewish high holidays fall out in

9  September and it's going to be very, very difficult for them to

10  properly prepare for such a hearing during September.  As a

11  practical matter, based upon this appraisal which I haven't

12  looked at and I haven't seen, I haven't shared with my client,

13  and I haven't analyzed and I haven't had the opportunity to

14  depose the appraiser over or anything of that sort, it would

15  appear based upon counsel's admissions that we have been

16  overpaying in our adequate protection payments which we are

17  prepared to continue to do to maintain the status quo.  There

18  is truly no prejudice to the bank which is by counsel's own

19  admission seems to be getting more than what it should be

20  getting.

21    MR. RAVERT:  Your Honor, I'm not --

22    THE COURT:  Well, it is true that you didn't start to

23  make adequate protection payments within the first 90 days of

24  the commencement of the case.  You didn't even start to make

25  them within the first 90 days after the possession of the

property was turned back to the debtor.

MR. ROSENBLOOM:  That's not so, Judge.  The payments that we made to the bank were for the period from April 1 right through August.  The property was returned to us effective as of --

THE COURT:  Well, they weren't actually made until July though; were they?  The payments weren't actually made until July; were they?

MR. ROSENBLOOM:  They were made shortly after, Your Honor.  As a matter of fact, they were made before --

THE COURT:  I guess that was June.

MR. ROSENBLOOM:  They were made before Your Honor entered the order which directed the payments.  In good faith I had tendered payments to bank's counsel contemplating entry of that order.  It was made before the order was entered.

MR. RAVERT:  Your Honor, I believe that the payments were not made until early August.  I don't even know if they were made in July.

MR. ROSENBLOOM:  That's not so.

THE COURT:  Okay.  Well, Mr. Rosenbloom, if this is all -- you would be under water by about how much based upon your appraisal?  What's the amount of the bank's deficiency?

MR. RAVERT:  $800,000.00 without including any liens that may have attached that we're not aware of.

THE COURT:  Well, that would cause them to dominate

1 the unsecured creditors class if you took out insiders;

2 wouldn't it?

3         MR. ROSENBLOOM:  Yes, ma'am.

4         THE COURT:  Okay.  So I think this is -- this case is

5 almost a year old.  You really should have had an exit strategy

6 by now even though you didn't get possession until March.  You

7 should have some idea of how you're getting out of this

8 situation.  I think that this is a case that it's reasonable

9 that -- if this case is really dead in the water because you

10 cannot confirm a plan over the bank's objection, I think that

11 there is no point in prolonging this and it's not appropriate

12 to prolong it any further.  So I think that it is incumbent

13 upon -- you have $100,000.00 in non-insider debt so you'd have

14 to have either no -- you'd have to have a deficiency claim of

15 let's say less than $35,000.00 in order not to have the

16 unsecured creditors class dominated.  Am I correct?  A majority

17 number two-thirds an amount.  So unless this appraisal is wrong

18 by almost $800,000.00 then this case cannot go anywhere because

19 you don't have an unsecured -- you don't have an impaired

20 consenting class.

21         MR. ROSENBLOOM:  I don't think, Your Honor, that it's

22 appropriate for us to give any credence to this appraisal which

23 was laid upon us at this hearing without anybody having a

24 chance to look at it, to study it.  I don't even know what it

25 says.

1          THE COURT:  I understand that, but I think that it's

2    reasonable to have an early valuation hearing.  If looking at

3    it you honestly contest the valuation, I think it's appropriate

4    for that to be determined at an early date.  And to tell me

5    that you're unavailable for the month of September doesn't -- I

6    don't think that's an appropriate response.  This is the middle

7    of August.  I know there are some days in September that are

8    not religious holidays.

9          MR. ROSENBLOOM:  That's certainly true, Your Honor,

10   but --

11         THE COURT:  Every Monday and Tuesday I'm informed.

12         MR. ROSENBLOOM:  Excuse me?

13         THE COURT:  Mondays and Tuesdays in the month of

14   September are not religious, should be okay I'm told.  So I

15   think that we should schedule a valuation hearing and at that

16   time you can bring forward any evidence that you may have to

17   show that there is equity in the property or that you have a

18   reasonable prospect of reorganization.  It's really going to

19   come down to valuation because of the classification issue.  So

20   I'll set that down for a date at the end of September.

21         MR. RAVERT:  Your Honor, if there's a time on the

22   Court's calendar, from my conversation with Mr. Rosenbloom

23   before it seems as though the early part of September, meaning

24   the first two weeks, is better in terms of the Jewish holidays

25   than the latter part, so --

1    MR. ROSENBLOOM:  Your Honor, that's just not adequate
2  time for us to study this, to get our own appraisers to take
3  their positions.
4    THE COURT:  Right.  He's going to have to have an
5  opportunity to consult an appraiser.  Right, right.  There's
6  nothing that week; is there?
7    THE CLERK:  [Inaudible].
8    THE COURT:  I'll give you the 28th of September.
9    MR. RAVERT:  The 20th, Your Honor?
10   THE COURT:  28th.
11   MR. RAVERT:  28th.
12   THE COURT:  The 28th, and at the 28th we'll start at
13  10:00.  Then the only question is what do we do with the Barron
14  Realty lease?  Does it make sense to hold off on that until we
15  see whether the stay is going to be lifted?
16   MR. RAVERT:  Your Honor, has Barron been -- Barron
17  has already paid the rent?
18   MR. ROSENBLOOM:  Oh, yes.  They paid July rent.  My
19  understanding is they paid August rent.  I don't see any
20  prejudice whatsoever with going forward with the Barron
21  transaction which only rents up the building.
22   MR. RAVERT:  I think interim approval until this
23  hearing probably would be appropriate.
24   THE COURT:  What would interim approval mean exactly?
25   MR. RAVERT:  That means that Barron can continue to

1   make the monthly payments and rent the apartments.

2          THE COURT:  But they don't have a binding contract.

3          MR. RAVERT:  Your Honor, I'm imagining it's similar

4   to interim approval of professionals, that there's some risk

5   involved.

6          MR. ROSENBLOOM:  Barron is entering into subleases

7   with the city I believe, Your Honor, anticipating, you know,

8   one year rentals.  The lease agreement with Barron is a two-

9   year agreement.

10         THE COURT:  What happens if the stay is lifted?  I

11  guess they're stuck with the agreement with Barron.

12         MR. ROSENBLOOM:  Hardly stuck with it.  They're

13  paying more than what the debtor is receiving from its other

14  tenants.  There's no -- I don't believe there's any issue

15  that's been raised that it's a fair market arrangement.  The

16  rents are --

17         THE COURT:  I think the concern was with the

18  financial wherewithal of Barron.  The fact that the individual

19  is giving a guarantee, I don't know how significant that is

20  because I don't know whether this individual has any assets in

21  his name or not so --

22         MR. ROSENBLOOM:  Nor do I, Judge, but generally when

23  people put their personal guarantee on the line in a commercial

24  real estate setting it is significant.

25         THE COURT:  If they have assets in their own name.

1    MR. ROSENBLOOM:  Yes, if they have assets in their
2 own name.  My client has been dealing with Barron in a
3 favorable fashion for five years and there's no basis to think
4 that --
5    THE COURT:  Is there any continuing objection to
6 approving this arrangement?
7    MR. RAVERT:  Your Honor, I at the very least would
8 want that guarantee.
9    THE COURT:  I beg your pardon?
10   MR. RAVERT:  At the very least we would want that
11 guarantee.  You know, we're interested in seeing this case
12 proceed to a hearing on the lift stay motion.  If it's
13 necessary to approve this lease transaction --
14   THE COURT:  So you're suggesting that I should
15 approve, that the lease should be approved contingent upon the
16 guarantee being executed?
17   MR. RAVERT:  I think that an interim approval with a
18 final hearing --
19   THE COURT:  I don't know what that means in the
20 context of a 363 motion of this nature, interim approval.  I
21 mean if you were advancing funds under a loan, interim approval
22 would mean that the funds advance for the interim period, have
23 the protection that's being granted pursuant to the order
24 authorizing the financing.  But in the context of a motion for
25 approval to enter into a lease with Barron, I don't know what

interim approval means.  I don't know what that signifies, what
rights they have or don't have based upon interim approval.

MR. RAVERT:  I appreciate that, Your Honor, and you
know, in the context of this case I didn't quite frankly think
the case would proceed to this point.  So I agree with you it's
problematic.

THE COURT:  Well, the question is what to do, whether
to carry this motion, whether to approve the motion based upon
the condition that the guarantee in form and substance
satisfactory to the Court is executed.

MR. RAVERT:  Your Honor, we would ask that the motion
be carried until the date of this hearing and that if the
motion for relief from stay is denied or something less than
the full relief we're requesting then that would be the
appropriate time to take it up.

THE COURT:  All right.  So I will carry the motion
unless -- is there some prejudice if I do that?

MR. ROSENBLOOM:  I believe so, Your Honor.  I
obviously don't represent Barron but I can think of a whole
host of concerns that they would have.  They're going to be
entering into subleases if they have not already.  We took the
approach that this was an ordinary course of business
transaction at first instance.  When we were here, the gravamen
was how do we know that there's really a lease with Barron and
is this not -- how do we know that Barron is a real entity and

1   that such a lease was made?  We --

2       THE COURT:  I have trouble seeing why I shouldn't
3   approve this.

4       MR. ROSENBLOOM:  I see absolutely no prejudice to
5   anybody in approving this subject of course to a good guy
6   guarantee being executed by Barron.

7       MR. RAVERT:  Well, Your Honor, I would just say Mr.
8   Rosenbloom is saying that at the time they entered into the
9   transaction they thought it was going to be an ordinary course
10  transaction and that's fine.  But as it turns out it's not.
11  And the risk to Barron Rentals is that if it's not an ordinary
12  course transaction and it's not approved by the Courts, it's
13  not valid.

14      THE COURT:  Well, the problem is that then they might
15  stop paying and that's not a good thing.  Or they may lose that
16  opportunity.  The debtor may lose this opportunity with them.

17      MR. RAVERT:  I appreciate that, Your Honor.  You
18  asked what my thoughts were and I took into account that they
19  could lose the opportunity.  I understand what it means to
20  adjourn it and I can only say that we think a final decision on
21  this application would be appropriate once we know that this
22  case is actually going forward.

23      MR. ROSENBLOOM:  Even if the case does not go
24  forward, it provides collateral for the bank under their
25  mortgage.  It provides $22,000.00 that wasn't there.  It

1  provides the ability for us to make the adequate protection
2  payments that were so difficult to make previously.  It's at
3  fair market value.
4          THE COURT:  What does the --
5          MR. ROSENBLOOM:  There are so many controls and
6  mechanisms in that lease.
7          THE COURT:  What does the agreement say about the
8  ability of the owner to cancel or to get back apartments from
9  Barron?
10         MR. ROSENBLOOM:  We have no ability to --
11         THE COURT:  But they have the ability to put back
12  apartments to the debtor on four months notice.
13         MR. ROSENBLOOM:  Precisely, on four months notice.
14         THE COURT:  And what's the term of this?  It's a two-
15  year term?
16         MR. ROSENBLOOM:  It's a two-year contract.
17         MR. RAVERT:  That's correct, Your Honor.
18         THE COURT:  There's cross default provisions so that
19  if there's a default under one, with respect to one unit
20  there's a default -- that the owner has the ability to get --
21         MR. ROSENBLOOM:  That's correct.
22         THE COURT:  -- all of the apartments back?
23         MR. ROSENBLOOM:  That's correct.
24         THE COURT:  I'm going to approve this subject to --
25  on the condition that an executed guarantee in form and

1  substance satisfactory to the Court is put on file.

2         MR. ROSENBLOOM:  Just as a matter of mechanics, how

3  shall I ascertain whether --

4         THE COURT:  What you can do is -- what you would do

5  is this I think.  You get the guarantee.  You can settle the

6  order with the guarantee, or show it to counsel and if has a

7  problem with it then he'll point that out to me, you know, will

8  explain to me what the problem is.  I assume that's something

9  you can work out between the two of you.

10         MR. ROSENBLOOM:  That's fine.

11         MR. RAVERT:  Thank you, Your Honor.

12         THE COURT:  So you can submit an order, Mr.

13  Rosenbloom, on the approval of the -- or submit or settle an

14  order --

15         MR. ROSENBLOOM:  Settle.

16         THE COURT:  Yes, on the --

17         MR. ROSENBLOOM:  On the Barron --

18         THE COURT:  -- on the Barron matter.

19         MR. ROSENBLOOM:  Will do, Your Honor.

20         THE COURT:  Okay?

21         MR. RAVERT:  And the hearing on the lift stay motion

22  then is adjourned till September 28th at 10:00?

23         THE COURT:  That's correct.

24         MS. LEONHARD:  Your Honor, will the case status

25  hearing also be heard at that time or is --

1          THE COURT:  Yes.  We'll put everything on for the

2   28th at 10:00.

3          MS. LEONHARD:  Thank you, Your Honor.

4          MR. ROSENBLOOM:  Thank you, Your Honor.

5                          *  *  *  *  *  *

1    I certify that the foregoing is a court transcript from an

2 electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5                    _____

6                              Mary Greco

7 Dated:   September 14, 2010

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$1** [1] 11:21
**$100,000.00** [2] 5:23 23:13
**$22,000.00** [1] 29:25
**$24,450.00** [1] 8:4
**$35,000.00** [1] 23:15
**$56,000.00** [1] 7:17
**$6** [2] 5:11,14
**$62,000.00** [2] 7:1,6
**$62,700.00** [1] 7:7
**$800,000.00** [2] 22:23 23:18

## 1

**1** [7] 2:1,1,25 10:8,9,11 22:3
**10** [1] 16:14
**10:00** [3] 25:13 31:22 32:2
**10018** [1] 1:22
**10036** [1] 1:18
**11** [1] 18:18
**11201** [1] 1:26
**12866** [1] 1:30
**12th** [1] 1:21
**14** [1] 33:5
**1501** [1] 1:17
**18** [2] 1:8 9:17
**180** [1] 19:19
**18th** [1] 15:13

## 2

**2** [1] 2:1
**2006** [2] 5:15,18
**2010** [6] 1:8 11:23 15:18 17:9,11 33:5
**20th** [1] 25:9
**211** [1] 1:29
**24.99%** [1] 16:13
**240** [1] 19:19
**271** [1] 1:25
**28th** [7] 25:8,10,11,12,12 31:22 32:2

## 3

**3** [1] 2:1
**30th** [1] 20:18
**362(d)(3** [2] 19:13,14
**363** [1] 27:20
**3rd** [1] 15:16

## 4

**4529** [1] 1:25
**462** [1] 1:21

## 7

**7th** [4] 1:21 2:13,23 10:13

## 9

**90** [7] 16:8,10,18 19:15,18 21:23,25

## A

**ability** [1] 13:20 30:1,8,10,11,20
**able** [2] 9:15 17:14
**above** [1] 33:2
**absolutely** [2] 15:22 29:4
**accept** [2] 13:12 14:16

**account** [2] 11:22 29:18
**acquired** [1] 5:18
**actually** [3] 22:6,7 29:22
**addresses** [2] 15:7,12
**adequate** [14] 2:15,20 4:19 8:24
  16:9,11 17:20 19:17,20 20:13 21:
  16,23 25:1 30:1
**adequately** [2] 16:17 20:6
**adjourn** [1] 29:20
**adjourned** [1] 31:22
**admission** [1] 21:19
**admissions** [1] 21:15
**advance** [1] 27:22
**advanced** [1] 3:1
**advancing** [1] 27:21
**afternoon** [3] 2:8 8:19 11:16
**agencies** [1] 19:20
**agent** [4] 7:23 8:10,13,15
**ago** [1] 15:19
**agree** [1] 28:5
**agreeable** [1] 10:23
**agreement** [6] 3:9 9:11 26:8,9,11
  30:7
**agrees** [1] 12:18
**ahead** [1] 17:16
**alicia** [3] 1:23 2:8 8:20
**allow** [1] 4:16
**almost** [2] 23:5,18
**already** [4] 11:17 20:7 25:17 28:21
**alternatively** [1] 20:9
**amount** [6] 2:25 5:10 7:17 8:2 22:
  22 23:17
**analyzed** [1] 21:13
**anniversary** [1] 6:6
**another** [2] 15:10 18:24
**answer** [1] 8:8
**anticipating** [1] 26:7
**anybody** [3] 8:14 23:23 29:5
**anyway** [1] 13:24
**apartment** [8] 8:6 11:1,6,6,9,12
**apartments** [9] 9:20 10:2 11:5,10
  26:1 30:8,12,22
**appear** [1] 21:15
**appearances** [2] 1:13 2:2
**appears** [2] 2:23 16:20
**application** [2] 14:15 29:21
**appraisal** [16] 11:20 12:2,4,11,15,
  24 13:3,11,17,22 14:10 16:10 21:
  11 22:22 23:17,22
**appraiser** [3] 13:24 21:14 25:5
**appraisers** [1] 25:2
**appreciate** [5] 14:6 15:23 19:25
  28:3 29:17
**approach** [1] 28:22
**appropriate** [8] 21:2 23:11,22 24:
  3,6 25:23 28:15 29:21
**approval** [10] 25:22,24 26:4 27:17,
  20,21,25 28:1,2 31:13
**approve** [8] 1:10 3:7 9:11 27:13,
  15 28:8 29:3 30:24
**approved** [2] 27:15 29:12
**approving** [2] 27:6 29:5

**approximately** [2] 11:21 17:11
**april** [4] 4:23 5:6 6:10 15:13 22:3
**argue** [1] 20:6
**argument** [3] 15:17 20:5,7
**arisen** [1] 11:24
**arm's** [3] 14:20,23 15:4
**arrangement** [4] 3:21 6:25 26:15
  27:6
**arrangements** [1] 14:21
**arrears** [3] 4:12,13 8:5
**ascertain** [1] 31:3
**assessed** [1] 14:8
**assets** [3] 26:20,25 27:1
**associates** [2] 1:20 2:7
**assume** [2] 14:18 31:8
**assuming** [1] 6:25
**assumptions** [1] 13:12
**attached** [5] 3:8 4:1 12:12 17:15
  22:24
**attempting** [1] 18:21
**attorneys** [1] 2:5
**attract** [1] 6:22
**august** [7] 1:8 2:21 10:8 22:4,17
  24:7 25:19
**authorizing** [1] 27:24
**automatic** [3] 16:5 18:10 19:8
**avenue** [1] 1:21
**aware** [1] 22:24

## B

**back** [7] 5:4,4 7:24 11:1,5,18 18:
  17 20:16 22:1 30:8,11,22
**bank** [17] 1:19 2:7,15,23,25 3:11 4:
  14,16 5:10 7:16 8:3 11:15,21 19:1
  21:18 22:3 29:24
**bank's** [6] 3:12,14 7:4 22:14,22 23:
  10
**bankruptcy** [4] 1:12 3:16 4:7 6:6
**barely** [1] 16:13
**barron** [37] 3:6,11,15,19 4:2 9:12,
  13,14,18,21 10:2,15,22,22 11:1,5,
  15:3,10 25:13,16,16,20,25 26:6,8,
  11,18 27:2,25 28:19,24,25 29:6,11
  30:9 31:17,18
**based** [12] 2:15 5:14 13:18,19 19:
  11,12,14 21:11,15 22:21 28:2,8
**basis** [4] 11:6 13:15 14:9 27:3
**basket** [1] 10:16
**beg** [1] 27:9
**began** [1] 10:9
**begin** [1] 2:15
**begun** [2] 10:7 20:7
**behind** [2] 10:24 15:10
**belief** [1] 13:19
**believe** [16] 3:13 5:9,24 6:21 8:7,9
  14:24 15:7 16:17 17:8 19:10 20:3
  26:7,14 28:18
**believes** [1] 12:15
**better** [2] 9:17 24:24
**between** [1] 31:9
**beyond** [1] 20:19
**binding** [1] 26:2
**bit** [3] 6:25 11:18 17:3

**bridge** [1] 11:17
**bring** [3] 13:6 15:4 24:16
**broadway** [1] 1:17
**broker** [2] 3:19 15:4
**brokerage** [1] 3:25
**brooklyn** [1] 1:26
**brought** [1] 3:6
**building** [5] 3:7 6:20 7:13 9:13 25:
  21
**buildings** [2] 3:20 15:4
**business** [3] 3:21 9:18 28:22
**businesses** [1] 3:23

## C

**cadman** [1] 1:25
**calendar** [4] 2:1,2,11 24:22
**came** [2] 8:23 19:23
**cancel** [1] 30:8
**cannot** [3] 7:15 23:10,18
**capable** [1] 19:17
**carla** [1] 1:11
**carried** [1] 28:12
**carry** [2] 28:8,16
**case** [18] 4:23 5:1 9:3,6 15:14 16:
  12 20:15 21:24 23:4,8,9,18 27:11
  28:4,5 29:22,23 31:24
**cash** [1] 9:9
**cause** [1] 22:25
**certain** [2] 2:14 11:3 20:12
**certainly** [8] 10:24 15:22 16:13,18
  17:19 19:5 20:5 24:9
**certify** [1] 33:1
**chance** [1] 23:24
**chapter** [1] 18:18
**check** [1] 2:25
**chief** [1] 1:12
**city** [5] 3:1 9:20 17:4,22 26:7
**city's** [1] 2:22
**claim** [1] 23:14
**claims** [1] 6:4
**clarified** [1] 6:17
**class** [4] 6:2 23:1,16,20
**classification** [1] 24:19
**clear** [3] 15:8 18:17 20:16
**clearly** [5] 3:15 4:2,15 11:12 15:1
**clerk** [2] 2:1 25:7
**client** [3] 3:6 21:12 27:2
**client's** [1] 9:20
**clients** [1] 21:7
**code** [3] 3:16 20:3,3,19
**collateral** [1] 29:24
**come** [5] 17:16 18:17 20:16,24 24:
  19
**comfort** [1] 11:3
**coming** [2] 6:5 18:23
**commenced** [1] 15:14
**commencement** [1] 21:24
**commercial** [1] 26:23
**community** [6] 1:19 2:7 8:3 11:14,
  21 19:1
**company** [1] 3:25
**complex** [2] 8:8,8
**complied** [1] 3:2

**concern** [2] 8:21 26:17
**concerned** [1] 15:7
**concerns** [3] 3:13 15:13 28:20
**concluding** [1] 13:15
**condition** [3] 18:3 28:9 30:25
**conference** [1] 1:9
**confirm** [2] 13:20 23:10
**confirmed** [1] 19:17
**confusion** [1] 7:25
**connection** [1] 3:17
**consenting** [1] 23:20
**considering** [1] 12:4
**consult** [1] 25:5
**contemplating** [1] 22:14
**contest** [4] 12:15,25 13:3 24:3
**contested** [3] 12:14,21,23
**context** [3] 27:20,24 28:4
**contingent** [1] 27:15
**continue** [6] 4:20 14:14 20:1,14
21:17 25:25
**continued** [1] 17:4
**continuing** [1] 27:5
**contract** [4] 2:16 9:11 26:2 30:16
**contractual** [3] 14:20,25 15:1,2
16:12
**control** [1] 15:17
**controls** [1] 30:5
**conversation** [1] 24:22
**copies** [1] 12:1
**copy** [3] 3:5,8 12:1
**correct** [6] 4:24 5:16,16,24 6:13 7:
1 9:16 10:3,4 11:7 14:22 23:16 30:
17,21,23 31:23
**costs** [2] 7:12,15
**counsel** [4] 1:20 2:6 8:25 14:25 17:
10 18:1 22:14 31:6
**counsel's** [3] 14:16 21:15,18
**couple** [1] 19:4
**course** [4] 28:22 29:5,9,12
**court** [115] 1:27 2:18 3:4,17 4:5,11,
23 5:2,7,13,19 6:1,9,12,15,24 7:6,
8,12,18 8:2,5,16 9:4,10,23 10:2,5,
8,11,14 11:5,8,14,25 12:3,7,17,21
13:2,8,15 14:2,6,10,12,22 15:20,
24 16:2,21 17:6,9,13,23 18:4,13,
19 19:3,7,11,13,20,24 20:1,5,8,10,
10,12,21 21:3,22 22:6,11,20,25 23:
4 24:1,11,13 25:4,8,10,12,24 26:2,
10,17,25 27:5,9,14,19 28:7,10,16
29:2,14 30:4,7,11,14,18,22,24 31:
1,4,12,16,18,20,23 32:1 33:1
**court's** [2] 2:11 24:22
**courts** [1] 29:12
**craig** [1] 1:11
**credence** [1] 23:22
**creditors** [3] 3:10 23:1,16
**cross** [1] 30:18
**crucial** [1] 9:1
**current** [1] 14:9
**currently** [1] 10:3

---
**D**
---

**d3** [2] 16:5,7

**date** [7] 4:19 16:18 17:7 21:3 24:4,
20 28:12
**dated** [1] 33:5
**dates** [1] 20:12
**days** [6] 16:8,10,18 19:15,18,19 21:
23,25 24:7
**dead** [2] 20:12 23:9
**dealing** [2] 9:17 27:2
**debt** [3] 5:22 6:2 23:13
**debtor** [29] 1:7,14 4:18 8:13,14,22,
23 9:1,4,5,14,14 10:18,23 11:1,2,
10 12:10,14,17 17:20 18:8 19:15
20:4,23 22:1 26:13 29:16 30:12
**debtor's** [4] 4:2 14:15 15:17
**debtors** [2] 2:5 20:12
**decision** [1] 29:20
**declaration** [1] 4:1
**decline** [2] 17:19 18:22
**declined** [1] 13:12
**default** [8] 11:8,12,13 16:12,15 30:
18,19,20
**deficiency** [3] 6:3 22:22 23:14
**defined** [1] 3:15
**degree** [1] 11:3
**delay** [1] 6:19
**denied** [1] 28:13
**department** [1] 1:24
**depose** [1] 21:14
**described** [1] 3:18
**description** [1] 4:6
**detailed** [1] 7:22
**determined** [1] 24:4
**develop** [2] 4:9 6:21
**different** [1] 16:16
**difficult** [1] 21:9 30:2
**directed** [5] 12:2 13:6 19:23 20:16
22:13
**direction** [1] 3:3
**directions** [1] 2:14
**disbursement** [1] 7:19
**disclosed** [1] 3:25
**discussed** [1] 17:2
**discussion** [1] 14:5
**documents** [1] 12:13
**dominate** [1] 22:25
**dominated** [2] 6:3 23:16
**done** [3] 12:2 17:10 19:19
**down** [4] 14:2 20:22 24:19,20
**dreams** [1] 20:15
**drop** [1] 20:12
**due** [2] 2:24 9:2
**during** [2] 16:16 21:10

---
**E**
---

**each** [1] 3:22
**early** [5] 17:9 22:17 24:2,4,23
**east** [1] 1:25
**effect** [2] 3:1 10:24
**effective** [1] 22:4
**eggs** [1] 10:16
**either** [5] 4:3 14:21 16:17 19:16 23:
14
**electronic** [2] 1:31 33:2

**emergency** [5] 11:23 17:3,8,22 18:
7
**end** [3] 15:19 16:19 24:20
**enough** [1] 18:8
**enter** [2] 14:15 27:25
**entered** [3] 3:6 22:13,15 29:8
**entering** [3] 9:11 26:6 28:21
**entitled** [3] 16:22,24 33:3
**entity** [1] 28:25
**entry** [1] 22:14
**equity** [8] 3:22 4:4 6:22 13:16,19
18:13 20:23 24:17
**erosion** [1] 16:25
**especially** [2] 8:22 11:22
**esq** [1] 1:14,19,23
**essential** [1] 9:3
**establish** [1] 20:2
**estate** [7] 2:19,24 3:25 7:16 15:17
18:1 26:24
**estate's** [1] 18:2
**even** [8] 5:20 15:16 19:19 21:24 22:
17 23:6,24 29:23
**everything** [1] 32:1
**evidence** [3] 12:6 13:23 24:16
**evidentiary** [3] 12:7,9,25
**exactly** [1] 25:24
**examine** [1] 12:10
**excess** [1] 5:10
**excuse** [1] 24:12
**executed** [4] 27:16 28:10 29:6 30:
25
**existing** [1] 4:17
**exit** [8] 4:7,9,21 5:21 6:21 18:18 20:
17 23:5
**expect** [2] 13:22 20:1
**experiences** [1] 9:21
**explain** [1] 31:8
**extension** [1] 20:11
**extent** [1] 20:10

---
**F**
---

**face** [1] 16:3
**fact** [13] 2:24 3:23 5:20 10:15,16
11:11 12:14,22,24 19:12,14 22:10
26:18
**factual** [1] 18:5
**fair** [2] 26:15 30:3
**fairly** [1] 7:24
**fairness** [1] 13:21
**faith** [1] 22:13
**fall** [1] 21:8
**falls** [1] 16:19
**far** [2] 15:6,9
**fashion** [1] 27:3
**fault** [1] 6:9
**favorable** [2] 9:22 27:3
**fell** [1] 2:24
**file** [2] 19:16 31:1
**filed** [3] 3:12 7:11 15:16
**filing** [1] 7:22 19:15
**final** [2] 27:18 29:20
**finally** [1] 6:20
**financial** [3] 9:23,25 18:2 26:18

**financially** [2] 9:3,6
**financing** [3] 4:15 6:23 27:24
**find** [2] 7:5 13:9
**finding** [3] 9:19 17:14 18:10
**fine** [4] 12:5 18:12 29:10 31:10
**finkel** [1] 1:15 2:5
**first** [6] 15:6,14 21:23,25 24:24 28:
23
**five** [2] 15:18 27:3
**fix** [1] 5:7
**floor** [1] 1:21
**flow** [1] 9:9
**foreclose** [1] 18:21
**foregoing** [1] 33:1
**form** [4] 4:15 28:9 30:25
**formulate** [2] 18:25,25
**forth** [5] 3:14 4:3 7:2,3,3
**forward** [7] 13:23 20:15,24 24:16
25:20 29:22,24
**four** [4] 11:2,6 30:12,13
**frankly** [2] 16:25 28:4
**friday** [1] 9:2
**full** [1] 28:14
**fully** [2] 6:13 8:23
**funds** [3] 18:1 27:21,22
**further** [5] 16:25 17:19 18:22 20:
11 23:12

---
**G**
---

**gary** [2] 1:19 2:6
**generally** [1] 26:22
**getting** [4] 6:19 21:19,20 23:7
**give** [7] 2:12 7:5 9:8 11:2,25 12:
10 13:3 15:11 20:12 21:3 23:22
25:8
**given** [1] 20:20
**giving** [2] 10:23 26:19
**goldberg** [2] 1:15 2:4
**goldstein** [2] 1:16 2:5
**got** [1] 13:17
**grant** [1] 20:11
**granted** [1] 27:23
**gravamen** [1] 28:23
**greater** [1] 5:17
**greco** [2] 1:27 33:4
**grounds** [2] 13:19 16:4
**guarantee** [7] 10:23 15:11 26:19,
23 27:8,11,16 28:9 29:6 30:25 31:
5,6
**guess** [4] 13:24 14:7 22:11 26:11
**guy** [2] 10:23 29:5

---
**H**
---

**half** [1] 18:24
**hand** [1] 13:22
**handle** [1] 9:5
**happen** [1] 16:10
**happened** [2] 2:12 16:7 17:6
**happens** [1] 26:10
**hardly** [1] 26:12
**he'll** [1] 31:7
**head** [1] 17:12
**heading** [1] 12:8

**hear** [1] 11:14
**heard** [2] 18:19 31:25
**hearing** [7] 1:9 6:17 10:13 12:8,9, 25 13:5 18:16,23 20:18,22 21:10 23:23 24:2,15 25:23 27:12,18 28: 12 31:21,25
**helpful** [1] 14:7
**high** [2] 16:13 21:8
**hold** [1] 25:14
**holder** [1] 4:4
**holders** [1] 3:22
**holidays** [3] 21:8 24:8,24
**honestly** [1] 24:3
**honor** [70] 2:8,10,12,14 3:4 4:8,18, 22,25 5:17,25 6:14,17 7:4,7,14,21 8:7,18,19,21 9:16 10:1,10,20,25 11:16 12:1,12,19 13:5,6 14:1,14, 24 15:22 16:8 17:2,25 18:12,17 19: 22,23 20:9 21:1,5,21 22:10,12,16 23:21 24:9,21 25:1,9,16 26:3,7 27: 7 28:3,11,18 29:7,17 30:17 31:11, 19,24 32:3,4
**honor's** [1] 3:2
**honorable** [1] 1:11
**hope** [2] 4:21 20:18
**hopes** [1] 20:15
**host** [1] 28:20
**however** [1] 6:18

**idea** [4] 6:4 9:18 23:7
**imagining** [1] 26:3
**immediately** [4] 9:2 10:13 19:5,8
**impaired** [1] 23:19
**inaudible** [1] 25:7
**inclined** [1] 20:11
**including** [2] 2:1 22:23
**incumbent** [1] 23:12
**indicate** [1] 17:10
**indicated** [3] 3:5 4:16 15:3
**individual** [2] 26:18,20
**information** [5] 4:1 9:24 10:1,15 14:7
**informative** [1] 7:20
**informed** [1] 24:11
**inquiring** [1] 3:11
**insider** [2] 3:12,15
**insiders** [2] 5:22 23:1
**instance** [1] 28:23
**intended** [1] 18:18
**intention** [1] 4:16
**interest** [6] 2:16,16 3:10 15:20 17: 1 18:22
**interested** [1] 27:11
**interests** [1] 19:2
**interim** [9] 25:22,24 26:4 27:17,20, 21,22 28:1,2
**interrupt** [1] 11:19
**investors** [1] 6:22
**involve** [1] 17:19
**involved** [1] 26:5
**isn't** [2] 6:4 18:6
**issue** [8] 12:14,14,22,24 15:15 16:

16 24:19 26:14
**itself** [1] 10:25

## J

**january** [2] 5:2 11:23
**jewish** [2] 21:8 24:24
**jews** [1] 21:8
**joint** [1] 3:21
**judge** [3] 1:12 22:2 26:22
**july** [5] 2:13,24 9:2 10:9,11 22:7,8, 18 25:18
**june** [4] 8:22 9:1 15:16 22:11
**justice** [1] 1:24
**justify** [1] 18:10

## K

**kilter** [1] 7:25
**kind** [1] 9:23
**knowing** [1] 8:24

## L

**lack** [3] 13:16,19 20:23
**laid** [1] 23:23
**last** [8] 2:13 3:4 6:17 7:10 10:13 13: 5 17:3 18:16
**late** [1] 8:22
**later** [1] 8:13
**latter** [1] 24:25
**lease** [11] 1:10 3:5,7,9 9:11 10:24, 25 11:12 14:16 15:2 25:14 26:8 27:13,15,25 28:24 29:1 30:6
**least** [3] 9:8 27:7,10
**length** [3] 14:20,23 15:5
**lengthy** [2] 6:14 9:18
**leonhard** [8] 1:23 2:8,9 8:19,20 9: 7 31:24 32:3
**less** [2] 23:15 28:13
**licensing** [1] 3:23
**lien** [2] 11:24,25
**liens** [3] 17:4,14 22:23
**lift** [4] 13:18 19:8 27:12 31:21
**lifted** [3] 20:13 25:15 26:10
**lifting** [1] 19:5
**light** [1] 16:10
**likely** [1] 11:24
**line** [1] 26:23
**listed** [1] 5:11
**little** [4] 4:8 6:25 11:18 17:3
**llp** [1] 1:16
**loan** [1] 27:21
**long** [2] 16:2,21
**longer** [3] 5:1 8:13 19:2
**look** [1] 23:24
**looked** [1] 21:12
**looking** [1] 24:2
**lose** [3] 29:15,16,19
**lot** [5] 5:21 10:16 11:17
**lynch** [2] 1:20 2:6
**lynch's** [1] 4:1

## M

**ma'am** [1] 23:3
**made** [18] 2:14 6:12 8:25 17:24 18:

3,5,7 20:7 22:3,6,7,9,10,12,15,17, 18 29:1
**main** [1] 20:4
**maintain** [1] 21:17
**maintained** [1] 21:6
**maintaining** [1] 17:21
**major** [1] 8:21
**majority** [1] 23:16
**managing** [5] 7:23,23 8:9,13,15
**many** [2] 11:17 30:5
**march** [3] 15:18 17:11 23:6
**market** [2] 26:15 30:3
**martense** [1] 1:5 2:2
**mary** [1] 1:27 33:4
**matter** [5] 5:5 11:11 21:11 22:10 31:2,18 33:3
**matters** [1] 21:1
**mean** [6] 5:21 6:1 18:4 25:24 27: 21,22
**meaning** [1] 24:23
**meaningful** [1] 12:10
**means** [6] 14:19,25 25:25 27:19 28:1 29:19
**mechanics** [1] 31:2
**mechanisms** [1] 30:6
**merely** [2] 15:10 16:11
**middle** [1] 24:6
**might** [1] 29:14
**million** [3] 5:12,14 11:21
**milton** [1] 1:29
**mind** [1] 3:14
**minimum** [1] 18:24
**missing** [1] 7:20
**monday** [1] 24:11
**mondays** [1] 24:13
**money** [1] 18:8
**month** [6] 7:1,11 8:22 21:7 24:5,13
**monthly** [2] 8:2 26:1
**months** [4] 4:20 6:16 11:2,6 15:19 18:24 30:12,13
**mortgage** [2] 2:17 4:17 29:25
**mortgagee** [1] 2:21
**most** [1] 17:8
**motion** [11] 1:10,10 3:7,8,10 6:12 7:4 9:10 12:13 13:18 19:10 20:22 27:12,20,24 28:8,8,11,13,16 31:21
**ms** [5] 2:8 8:19 9:7 31:24 32:3
**much** [3] 4:11 9:17 22:21

## N

**name** [4] 15:10 26:21,25 27:2
**nature** [1] 27:20
**neal** [2] 1:14 2:4
**necessarily** [1] 12:13
**necessary** [1] 27:13
**need** [4] 12:9,25 18:4,7
**needed** [1] 16:25
**needs** [2] 12:15 18:6
**new** [11] 1:5,18,22,30 2:2,7 3:24 6: 22,22 8:3 11:14,20 19:1
**next** [1] 4:21
**non-insider** [1] 23:13
**none** [1] 4:2

3,5,7 20:7 22:3,6,7,9,10,12,15,17, 18 29:1
**nor** [1] 26:22
**normal** [1] 7:24
**nothing** [2] 15:9 25:6
**notice** [4] 11:2,6 30:12,13
**november** [1] 4:22
**number** [2] 1:23 3:17
**numerous** [1] 12:12
**ny** [4] 1:18,19,22,26

## O

**objection** [4] 3:11 15:7 23:10 27:5
**obligations** [2] 11:8 15:12
**obtain** [1] 4:15
**obtained** [1] 11:20
**obviously** [5] 15:13 18:20 28:19
**occupants** [1] 9:13
**october** [6] 4:20 5:2,5 15:14 20:18 21:7
**okay** [9] 6:1 8:16 11:14,25 14:6 22: 20 23:4 24:14 31:20
**old** [1] 23:5
**once** [2] 16:23 29:21
**one** [12] 3:11 6:6 7:5,19 8:10,11 10: 16 11:9,12 19:5,7,9 26:8 30:19,19
**ongoing** [1] 3:21
**only** [7] 7:18 13:8 19:18 25:13,21 29:20
**operating** [7] 7:8,10,12,15,18,22,8: 22 9:1,8
**opportunity** [6] 12:10 21:13 25:5 29:16,16,19
**opposition** [3] 3:13,14 7:4
**option** [2] 19:5,7,9
**options** [1] 19:5
**order** [9] 1:9 22:13,15,15 23:15 27: 23 31:6,12,14
**ordered** [2] 6:15,19
**ordinary** [3] 28:22 29:9,11
**orthodox** [1] 21:8
**other** [14] 3:18,19 5:22 7:15 8:14 11:10,23 12:1 15:2,4 16:2,4 17:14 26:13
**other's** [1] 3:23
**otherwise** [4] 11:4 17:22 18:2 20: 5
**out** [8] 6:5 10:22 21:8 23:1,7 29:10 31:7,9
**outline** [2] 5:20 7:15
**over** [7] 5:14 6:25 10:3 15:17 16: 14 21:14 23:10
**overpaying** [1] 21:16
**owed** [2] 4:13 5:10
**own** [7] 21:18 25:2 26:25 27:2
**owned** [1] 3:20
**owner** [2] 30:8,20
**ownership** [2] 4:17 14:18

## P

**paid** [12] 2:24 3:1 5:15 7:16 8:11 23 17:16 18:6,6 25:17,18,19
**papers** [2] 7:3 15:3
**pardon** [1] 27:9
**part** [4] 11:10 17:18 24:23,25

**parties** [1] 3:10
**past** [2] 9:21 15:2
**pause** [1] 14:13
**pay** [3] 2:18,19 9:15
**paying** [7] 8:6,9 9:13 15:20 16:15 26:13 29:15
**payment** [1] 8:2
**payments** [25] 2:15,20 4:19 8:10, 11,12,14,24 16:9,11 17:20 19:18, 21,23 20:7,14 21:16,23 22:2,7,13, 14,16 26:1 30:2
**pending** [3] 4:23 5:1 6:14
**people** [1] 26:23
**perhaps** [1] 16:15
**period** [6] 2:21 6:15 9:18 16:16 22: 3 27:22
**person** [1] 15:11
**personal** [1] 26:23
**petition** [2] 16:18 17:6
**ph** [1] 15:15
**place** [1] 10:13
**placement** [1] 9:20
**plan** [7] 13:20 18:18,25,25 19:16 20:13 23:10
**plaza** [1] 1:25
**pleading** [1] 15:16
**please** [2] 2:3 4:5
**point** [1] 3:23 4:9 8:6,10,11,12 10: 22 15:9 23:11 28:5 31:7
**points** [1] 15:6
**position** [1] 7:22
**positions** [1] 25:3
**possession** [6] 5:3,4 6:8 8:23 21: 25 23:6
**practical** [1] 5:5 21:11
**prayer** [2] 4:18 21:5
**precisely** [1] 30:13
**prejudice** [4] 21:18 25:20 28:17 29:4
**premature** [1] 4:9
**prepare** [1] 21:10
**prepared** [2] 10:24 21:17
**presentation** [2] 11:19 13:23
**presented** [1] 6:16
**presently** [1] 18:3
**prevent** [2] 16:25 18:22
**preventing** [1] 17:18
**previously** [1] 30:2
**price** [2] 5:14,14
**principal** [2] 3:20 15:10
**principals** [1] 4:3
**probably** [3] 14:7 21:1 25:23
**problem** [3] 29:14 31:7,8
**problematic** [1] 21:7 28:6
**proceed** [2] 27:12 28:5
**proceedings** [3] 1:31 14:13 33:2
**processing** [1] 1:28
**produced** [1] 1:32
**professional** [1] 14:8
**professionals** [1] 26:4
**prolong** [1] 23:12
**prolonging** [1] 23:11

**proof** [2] 13:6,10
**properly** [2] 17:21 21:10
**property** [24] 5:4,4,8,10,11,15,18 6: 8 7:24 12:6,18 13:7,11,16,19 17:1, 15,19,21 18:14 20:23 22:1,4 24:17
**prospect** [3] 18:14 20:24 24:18
**protect** [1] 18:22
**protected** [3] 16:17 19:2 20:6
**protection** [2] 2:15,20 4:19 8:24 17:20 19:17,21 20:14 21:16,23 27: 23 30:1
**protracted** [1] 6:18
**provide** [3] 4:5 12:2 13:10
**provided** [1] 16:9
**provides** [6] 11:3,12 19:16 29:24, 25 30:1
**provisions** [1] 30:18
**pursuant** [1] 27:23
**pursue** [2] 6:9 13:18
**put** [6] 6:20 8:17 26:23 30:11 31:1 32:1
**puts** [1] 3:7
**putting** [1] 10:16

### Q

**question** [4] 8:8 16:9 25:13 28:7
**questions** [1] 6:16
**quickly** [1] 2:12
**quite** [1] 28:4
**quo** [2] 21:6,17

### R

**raised** [2] 15:15 26:15
**rate** [2] 2:16 16:12,12,13,15
**ravert** [54] 1:19 2:6,6 11:16 12:5, 12,19,23 13:5,14 14:1,4,10,14 15: 6,22 16:1,7 17:2,8,18,25 18:12,16, 20 19:4,8,12,14,22,25 20:2,9 21:1, 21 22:16,23 24:21 25:9,11,16,22, 26 26:3 27:7,10,17 28:3,11 29:7, 17 30:17 31:11,21
**re** [1] 1:3
**read** [1] 16:23
**reading** [2] 12:4 20:3
**real** [7] 2:19,24 3:25 5:15 7:16 26: 24 28:25
**really** [6] 3:7 9:4,5 14:4 23:5,9 24: 18 28:24
**realty** [1] 25:14
**reason** [1] 17:23
**reasonable** [5] 13:20 20:25 23:8 24:2,18
**reasonably** [1] 19:16
**receive** [1] 3:9
**received** [1] 3:11
**receiver** [4] 5:5,6 8:10,11
**receives** [1] 12:24
**receiving** [1] 26:13
**recent** [1] 17:8
**recently** [1] 14:15
**recollection** [1] 17:11
**record** [6] 8:17,20 14:5 17:13 18:5, 9

**recorded** [1] 1:31
**recording** [1] 1:31 33:2
**records** [1] 2:22
**recourse** [2] 10:18,21
**reflects** [1] 4:2
**reimburse** [1] 3:2
**reimbursed** [2] 15:21 17:17
**relationship** [6] 3:21 14:17,18,20, 23 15:1
**relationships** [3] 14:19,25 15:2
**relief** [1] 1:10 12:9 16:4,5 19:9 20: 22 21:5 28:13,14
**religious** [2] 24:8,14
**remitted** [1] 2:20
**rent** [5] 1:17 6:24 7:4 8:5 10:5,7,9 25:17,18,19 26:1
**rentals** [1] 3:6,12 26:8 29:11
**rents** [5] 5:17 7:25 8:1,5,9 25:21 26:16
**reorganization** [4] 18:14 19:16 20:25 24:18
**repairs** [7] 11:24 17:3,9,22 18:1,4, 7
**replacement** [1] 4:15
**reply** [3] 3:12,13,19 10:21
**report** [6] 7:8,10,18 8:22 9:1 12:11
**reports** [2] 7:23 9:8
**represent** [2] 8:25 28:19
**representations** [1] 14:17
**request** [1] 13:7
**requesting** [1] 28:14
**require** [1] 3:24
**required** [1] 11:2
**requirements** [5] 3:24 15:15,25 16:3 20:20
**requires** [1] 10:25
**respect** [4] 6:18 11:9,10 30:19
**responding** [1] 13:7
**response** [1] 24:6
**responsive** [1] 14:5
**restructured** [1] 4:17
**returned** [1] 22:4
**rights** [1] 11:9 28:2
**risk** [4] 9:14,17 26:4 29:11
**risks** [1] 9:13
**road** [1] 1:29
**role** [1] 5:17
**roll** [1] 2:9 7:4
**rosenbloom** [73] 1:14 2:4,4,10,19 3:18 4:8,13,25 5:3,9,16,24 6:7,11, 13 7:2,7,10,14,21 8:4,7,18 9:16,25 10:4,7,9,12,20 11:7,11 12:20 13:3, 21,22 14:11,23 21:5 22:2,9,12,19, 20 23:3,21 24:9,12,22 25:1,18 26: 6,12,22 27:1 28:18 29:4,8,23 30:5, 10,13,16,21,23 31:2,10,13,15,17, 19 32:4
**route** [1] 14:3

### S

**sales** [1] 5:14
**salesperson** [1] 4:3
**same** [1] 8:12

**saratoga** [1] 1:30
**sare** [3] 15:15,25 20:20
**satisfactory** [2] 28:10 31:1
**satisfied** [2] 3:13 16:8
**satisfies** [1] 16:3
**satisfy** [1] 15:24 16:5
**saw** [1] 20:5
**saying** [2] 12:17 29:8
**says** [4] 14:19 19:15 20:3 23:25
**schedule** [1] 24:15
**scheduled** [1] 5:13
**schedules** [1] 5:11
**scheduling** [1] 11:9
**searched** [1] 2:22
**second** [2] 7:5 15:9
**secured** [2] 6:2 13:10
**security** [1] 11:4
**see** [3] 3:5 14:8 18:9 25:15,19 29:4
**seeing** [2] 27:11 29:2
**seem** [1] 4:14
**seems** [3] 16:21 21:19 24:23
**seen** [1] 21:12
**semiannual** [1] 7:15
**sense** [1] 25:14
**sensing** [1] 9:5
**sensitive** [1] 18:20
**sent** [1] 2:25
**separate** [1] 6:3
**september** [4] 4:20 10:6 21:3,7,9, 10 24:5,7,14,20,23 25:8 31:22 33: 5
**served** [3] 3:9,19 15:3
**service** [2] 1:28,32
**set** [3] 3:14 4:3 7:2,3,3 20:21 24:20
**setting** [1] 26:24
**settle** [3] 31:5,13,15
**several** [2] 2:10 6:15
**shall** [4] 9:10 19:15 20:4 31:3
**shape** [2] 3:8 6:20
**share** [1] 14:10
**shared** [1] 21:12
**shopping** [1] 6:21
**short** [1] 16:19
**shortly** [1] 22:9
**shouldn't** [1] 29:2
**show** [3] 20:24 24:17 31:6
**shown** [1] 18:15
**shows** [2] 7:18,19 11:20
**sic** [1] 15:13
**sight** [2] 15:19 16:19
**significant** [3] 8:5 26:19,24
**signifies** [1] 28:1
**similar** [1] 26:3
**simple** [1] 8:8
**simply** [1] 13:11
**since** [9] 2:12 4:23 5:2,2 8:23 10: 15 16:18 17:6 19:23
**situation** [2] 6:5 23:8
**six** [1] 15:18
**sorry** [1] 5:6
**sort** [2] 3:22 21:14
**sought** [1] 19:9

**sound** [2] 1:31 33:2
**sources** [1] 6:22
**speaking** [1] 14:15
**specialize** [1] 9:19
**specific** [2] 18:17 20:17
**specifically** [2] 17:10 20:16
**spirit** [1] 3:2
**springs** [1] 1:30
**stand** [3] 7:14 10:24 15:13
**start** [6] 6:21 7:22 10:5 21:22,24 25:12
**state** [1] 3:24
**statement** [1] 15:8
**states** [3] 1:12,24 2:9
**status** [4] 1:9 21:6,17 31:24
**stay** [16] 1:10 12:9 13:18 16:4,5 18:11 19:5,8 20:11,13,22 25:15 26:10 27:12 28:13 31:21
**steps** [1] 17:22
**still** [2] 15:18 16:19
**stipulation** [3] 6:14,18,19
**stockholder** [1] 14:18
**stockholders** [1] 3:25
**stop** [1] 29:15
**strategy** [7] 4:7,9,21 5:21 6:21 20:17 23:5
**strict** [1] 20:2
**strictly** [1] 14:19
**stuck** [2] 26:11,12
**study** [2] 23:24 25:2
**subject** [2] 29:5 30:24
**subleases** [2] 26:6 28:21
**submit** [4] 12:5 17:9 31:12,13
**substance** [2] 28:9 31:1
**substantial** [1] 4:14
**suggesting** [1] 27:14
**suite** [1] 1:25
**suppose** [1] 12:15
**supposed** [1] 8:1
**surrender** [1] 11:5
**surrendering** [1] 11:1

## T

**taxes** [8] 2:18,19,24 7:16 11:22,23 15:21 17:15
**tenants** [7] 8:1,9 9:18 10:18,21 15:4 26:14
**tendered** [2] 4:19 22:14
**term** [3] 3:15 30:14,15
**termination** [1] 18:10
**terms** [3] 16:4 20:2 24:24
**testify** [1] 13:24
**there's** [22] 11:16 12:21,23 13:15 14:17 15:1,1,19 16:2 18:13 19:4 20:23 24:21 25:5 26:4,14,14 27:3 28:24 30:18,19,20
**they've** [2] 17:16 19:20
**thinking** [1] 13:2
**though** [3] 22:7 23:6 24:23
**thoughts** [1] 29:18
**till** [1] 31:22
**timbers** [1] 16:23
**timing** [1] 18:21

**today** [8] 5:21 8:24 11:17 13:17,23 15:13 18:23 20:17
**tolerated** [1] 20:20
**took** [4] 10:12 23:1 28:21 29:18
**top** [1] 17:12
**toward** [1] 12:8
**transaction** [9] 9:12 10:12 14:16 25:21 27:13 28:23 29:9,10,12
**transactions** [1] 15:5
**transcriber** [1] 1:27
**transcript** [3] 1:9,31 33:1
**transcription** [1] 1:32
**trigger** [1] 11:9
**triggers** [1] 11:12
**trouble** [1] 29:2
**troubled** [2] 5:19,19
**true** [2] 21:22 24:9
**truly** [1] 21:18
**trump** [2] 11:24 17:15
**trumping** [1] 17:4
**trustee** [3] 1:23 2:9 7:19
**try** [2] 6:22 11:18
**tuesday** [1] 24:11
**tuesdays** [1] 24:13
**turn** [1] 9:10
**turned** [1] 22:1
**turns** [1] 29:10
**two** [6] 15:6 18:24 24:24 26:8 30:14 31:9
**two-thirds** [1] 23:17
**two-year** [1] 30:16
**typewrite** [1] 1:28

## U

**unavailable** [1] 24:5
**unbeknownst** [1] 2:22
**under** [10] 11:17,21 13:9 16:5,23,24 22:21 27:21 29:24 30:19
**under-secured** [1] 16:24
**underlying** [3] 3:9 10:18,21
**understand** [6] 6:4 10:15 14:25 16:23 24:1 29:19
**understanding** [2] 18:2 25:19
**understood** [1] 6:7
**uniformly** [1] 9:21
**unit** [1] 30:19
**united** [3] 1:12,24 2:9
**unless** [2] 23:17 28:17
**unsecured** [5] 5:22 6:2 23:1,16,19
**until** [12] 5:5,6 6:8,10 15:18 22:6,8,17 23:6 25:14,22 28:12
**up** [5] 6:5 11:18 18:23 25:21 28:15
**update** [1] 2:12
**updated** [1] 7:8
**useful** [1] 14:7

## V

**vacant** [1] 10:3
**valid** [1] 29:13
**valuation** [5] 12:18 24:2,3,15,19
**value** [8] 5:7,9 12:6 13:6,12,12 14:8 30:3
**venture** [1] 3:21

## W

**wait** [1] 19:1
**wanted** [1] 3:5
**water** [5] 11:17,21 16:23 22:21 23:9
**way** [4] 4:11 10:21 16:17 20:19
**website** [1] 9:19
**week** [1] 25:6
**weeks** [1] 24:24
**weprin** [2] 1:15 2:4
**whatever** [1] 16:25
**whatsoever** [2] 3:17 25:20
**wherewithal** [1] 26:18
**whether** [8] 3:11 8:24 10:15 25:15 26:20 28:7,8 31:3
**whole** [1] 28:19
**will** [9] 6:24,25 10:18,20 20:24 28:16 31:7,19,24
**willing** [1] 15:11
**within** [14] 3:14,15 7:2,3,3 13:20 16:8,10,18 19:12,15 20:25 21:23,25
**without** [3] 16:9 22:23 23:23
**word** [1] 1:28
**words** [1] 11:23
**work** [1] 31:9
**working** [1] 4:10

## Y

**year** [7] 2:22 6:6 18:23 23:5 26:8,9 30:15
**years** [1] 27:3
**yisroel** [1] 10:22
**york** [11] 1:5,18,22,30 2:2,7 3:24 8:3 11:14,21 19:1