**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MARTENSE NEW YORK, INC., | Case No. 09-48910 (CEC) |
| *Debtor In Possession*. | |

## NEW YORK COMMUNITY BANK'S OBJECTION TO DISCLOSURE STATEMENT

New York Community Bank ("NYCB"), by and through its counsel, hereby files this objection (the "Objection") to the above-captioned debtor's (the "Debtor") Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, and represents as follows:

## PRELIMINARY STATEMENT

1. On March 31, 2011, the Debtor filed its Chapter 11 Plan and associated Disclosure Statement. The Disclosure Statement falls far short of the requirements of section 1125 of the Bankruptcy Code and cannot be approved in its current form. NYCB recognizes that a consensual plan process is preferable where it is possible. Although NYCB has not yet made a determination as to whether it will support the Plan, the omission of significant information regarding the implementation of the Plan makes supporting the Plan impossible. First, it lacks adequate information concerning the Debtor's ability to carry out the terms of the Plan. Accordingly, it calls into question whether the Plan is patently unconfirmable and should be rejected by the Court at the Disclosure Statement stage. Next, the Disclosure Statement fails to set forth the Debtor's approximate liquidation value so all creditors can determine whether a chapter 7 liquidation would yield a more favorable recovery. For all of the foregoing reasons,

each as more fully described below, the Disclosure Statement should not be approved in its current form.

## OBJECTION

2. As drafted, the Disclosure Statement fails to comply with the disclosure requirements of section 1125 of the Bankruptcy Code and should not be approved. Without the required information, neither NYCB nor any other creditor can make an informed judgment about the Plan.

**Legal Standard**

3. Section 1125(b) provides that:

An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim. . . unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

11 U.S.C. § 1125(b).

4. "Adequate information" means

[I]nformation of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. § 1125(a)(1); *see also In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994).

5. The disclosure requirements of section 1125 are "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor*

*Freight, Inc.)*, 848 F.2d 414 (3d Cir. 1988)). The adequacy of a disclosure statement is judged principally on whether it aids impaired classes in determining whether to accept or reject the plan. *See Talarico v. Thomas Crimmins Contracting Co.*, No. 94 Civ. 0420, 1995 U.S. Dist. WL 422034, at *5 (S.D.N.Y. July 18, 1995) ("A disclosure statement . . . is evaluated only in terms of whether it provides sufficient information to permit enlightened voting by holders of claims or interests") (citation omitted).

6. "Adequate information" under section 1125 is "determined by the facts and circumstances of each case." *See In re Oneida Motor Freight, Inc.*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)). The "adequate information" requirement is designed to help creditors in its negotiations with Debtor over the plan. *See Century Glove, Inc. v. First American Bank*, 860 F.2d 94 (3d Cir. 1988). The requirement to provide adequate information in a disclosure statement is a "pivotal concept in reorganization procedure under the Code." *In re Oneida*, 848 F.2d 414, 417.

7. To satisfy the standard of Bankruptcy Code § 1125(a), a disclosure statement must contain, "at a minimum," adequate information concerning "all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." *In re Beltrami Enters.*, 191 B.R. 303, 304 (Bankr. D. Pa. 1995) (quotations and citations omitted). Those factors include, among others: (i) a summary of the plan of reorganization and information as to how the plan is to be executed; (ii) a description of the reorganized debtor's business; (iii) projections of future operations that would be relevant to creditors' and equity security holders' determinations of whether to accept or reject the plan; (iv) information regarding current litigation against the debtor or litigation likely to arise in a non-bankruptcy context; (v) an accurate description of the debtor's available assets and its value; (vi)

the condition and performance of the debtor while in chapter 11; (vii) information relevant to the risks posed to creditors and equity security holders under the plan; (viii) and the tax consequences of the plan. *See In re Microwave Products of America, Inc.*, 100 B.R. 376, 378 (Bankr. D. Tenn. 1989); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170 (Bankr. D. Ohio 1988).

8. Approval of the Disclosure Statement may be denied when the plan it describes is patently unconfirmable. NYCB is mindful of the distinction between issues that are appropriately addressed at the Disclosure Statement hearing and those that are, in reality, Plan objections. However, it is well established that courts may consider substantive plan issues at the disclosure statement hearing and deny approval to disclosure statements predicated upon facially unconfirmable plans. *In re Quigley Co.*, 377 B.R. 110, 115-16 (Bankr. S.D.N.Y. 2007) ("If the plan is unconfirmable on its face, the application to approve the disclosure statement must be denied, as solicitation of the vote would be futile."); see also *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("approval should be withheld if 1) it is apparent that the plan will not comply with Code § 1129(a) and 2) if it does not contain such information so that all creditors and equity shareholders can make an intelligent and informed decision about whether to accept or reject the plan."); *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988) (denying approval of disclosure statement describing unconfirmable plan "to avoid . . . a wasteful and fruitless exercise" that would "further delay a debtor's attempts to reorganize").

**Argument**

9. The proposed Plan and Disclosure Statement cannot be approved in their current forms. The Debtor' proposed Plan is patently unconfirmable because, based on the disclosures, the Debtor cannot satisfy section 1129(a)(11) of the Bankruptcy Code. That provision requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for

further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Section 1129(a)(11) requires that "courts scrutinize carefully the plan to determine whether it offers a reasonable prospect of success and is workable." *In re Beyond.com Corp.*, 289 B.R. 138, 145 (Bankr. N.D. Cal. 2003). The Debtor's proposed Plan is not confirmable for two principal reasons, each of which is independently fatal to confirmation: it fails to make a prima facie case for feasibility or that it satisfies the best interests test.

(a) The Disclosure Statement Lacks Adequate Information Concerning the Magnitude and Wherewithal of the Funding Sources Under the Plan.

10. The Disclosure Statement lacks any information whatsoever about the magnitude and wherewithal of the funding sources under the Plan. Without that information, it is impossible to draw a conclusion about whether the Plan is feasible. In fact, absent such information, one is compelled to conclude the Plan is not feasible.

11. Under the Plan, the Debtor makes payments in approximately the following amounts (to the best NYCB has been able to discern):

*Proposed Payments to NYCB*

- Payment of interest only on the outstanding principal ($4,823,911.30) at the non-default rate (5.875%) monthly in the amount of $24,450 for two years after the Effective Date;
- Beginning two years after the Effective Date, the principal amount will be amortized at the non-default rate based on a fixed rate, 30-year amortization schedule with a monthly payment of $28,535.26 through the maturity dated of February, 29, 2016;
- On February 29, 2016, the full amount of remaining principal ($4,823,911.30, less prior principal payments) will be paid in one balloon payment;
- The amounts of $291,337.03 (representing prepetition interest) and $281,220.53 (representing forced place insurance, tax advances and legal fees), for a total of $572,557.56, will be paid at an interest rate of prime plus 3% in four annual installments commencing one year after the Effective Date. These annual payments would each be in the amount of approximately $165,235 (using, for example, a 6% rate);

- The outstanding interest payments for the months between November 2009 and April 2010 totaling $122,250 would be paid, with interest accruing at prime plus 3%, on February 29, 2016;
- To the extent that the building does not generate enough income to support the payments under the plan, Mr. Nelkenbaum will be backstopping all such plan payments.

*Proposed Payments to City of New York ("NYC")*

- $207,466.09 in emergency repair liens will be paid in 20 quarterly installments at the statutory rate. Such payments would total $10,373.30 without factoring in the statutory interest.

*Proposed Payments to General Unsecured Creditors ("GUC")*

- With a claim pool of approximately $3,000,000 and a proposed 5% distribution to unsecured creditors one year after the Effective Date, the Plan calls for another $150,000 in payments.

12. In sum, the Debtor will need something on the average of the following approximate **monthly** amounts (again, as best as NYCB has been able to discern from reviewing the Disclosure Statement and based on communications with the Debtor):

- Year One: NYC: $3,500 (plus interest), GUC: $12,500, NYCB-Interest: $24,450, NYCB-Other $13,769 (1/12 of $165,235) for a total average monthly payment of **$54,219**.
- Year Two: NYC: $3,500 (plus interest), NYCB-Interest: $24,450, NYCB-Other $13,769 (1/12 of $165,235) for a total average monthly payment of **$41,719**.
- Year Three: NYC: $3,500 (plus interest), NYCB-Interest/Principal: $28,535.26, NYCB-Other $13,769 (1/12 of $165,235) for a total average monthly payment of **$45,804.26**.
- Year Four: NYC: $3,500 (plus interest), NYCB-Interest/Principal: $28,535.26, NYCB-Other $13,769 (1/12 of $165,235) for a total average monthly payment of **$45,804.26**.
- Year Five: NYC: $3,500 (plus interest), NYCB-Interest/Principal: $28,535.26, NYCB-Other $13,769 (1/12 of $165,235); plus a year-end lump sum of approximately $4,580,000 (1/12 of which is $381,666.66), for a total Year Five average monthly payment of **$427,470.92**.

13. None of the foregoing amounts includes any amounts that need to be paid in connection with maintaining a property in New York City, including real estate taxes, insurance, fuel, electricity, maintenance, etc. It is clear that the average monthly proposed payments under the Plan are extremely substantial and, as NYCB understands the approximate rent roll far

exceeds the Martense property's income from rents.  This raises two issues, each addressed below.

14. As an initial matter, the Disclosure Statement should clarify the property's income and expenses, currently and prospectively.  This is a single asset real estate case.  Therefore, the Disclosure Statement should include updated information on the property's rent roll and expenses, including, among other things, maintenance charges and charges for refreshing apartments upon changes of tenancies.  The Debtor should also build in an appropriate vacancy factor into the budget.  Clarifying such figures is of particular importance here because it appears that the operating statements reflect lower expenses than last year's budget even though energy prices have risen substantially.  Only with the clarification of such information can creditors begin to reach a conclusion about whether to support the Plan.

15. Next, because (i) it appears that the rent roll could not possibly support both the proposed payments under the Plan and the carrying costs of the property, and (ii) the Plan proposes to have Mr. Yehuda Nelkenbaum backstop all such payments as his contribution of new value (for which he retains his full equity interest), the Disclosure Statement must provide additional information about Mr. Nelkenbaum's financial wherewithal.  Without such information, the Plan is patently unfeasible and, therefore,unconfirmable.  Given the amounts at issue, and the history of defaults, Mr. Nelkenbaum should be required to provide some form of undertaking, such as a guaranty of a solvent non-Debtor, non-insider entity, or a letter of credits, a bond, or some other formidable proof of ability to perform.  Such undertaking should be disclosed in an amended Disclosure Statement.

(b) The Disclosure Statement Fails to Set Forth
Even an Approximate Liquidation Analysis

16. The Disclosure Statement fails to provide any information regarding the return to un- and under-secured creditors (if any) and the amounts such creditors would likely recovery in a chapter 7 liquidation. Therefore, it is not confirmable because it does not purport to satisfy the best interest of creditors test. By all appearances, the return to general unsecured creditors will not be substantial in this case. At a low recovery, it may well be that a chapter 7 liquidation would yield a higher recovery and therefore, immediate conversion or dismissal would be more appropriate. It is impossible to make this determination based on the Plan and Disclosure Statement on file. Accordingly, the Disclosure Statement simply cannot be approved and creditors cannot be expected to assess and vote on the Plan, until the appropriate or even estimated liquidation values are provided.

17. For all of the foregoing reasons, the Disclosure Statement should not be approved as drafted.

## **CONCLUSION**

WHEREFORE, for the reasons stated above, NYCB and respectfully request that this Court not approve the Disclosure Statement in the current form, and grant such other and further relief as the Court deems just and proper.

Dated: April 19, 2011  
      New York, New York

LYNCH & ASSOCIATES

By: /s/ Gary O. Ravert_____  
    Gary O. Ravert (Of Counsel)  
    H. Michael Lynch  
    462 Seventh Avenue, 12th Floor  
    New York, New York 10018  
    Tel: (212) 683-4141  
    Fax: (917) 677-5419

*Attorneys for New York Community Bank*