UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re

MARTENSE NEW YORK, INC,

Debtor.

Chapter 11

Case No. 09-48910 (CEC)

-----------------------------------------------------------x

## OBJECTION OF THE UNITED STATES TRUSTEE TO THE
## APPROVAL OF THE DEBTOR'S DISCLOSURE STATEMENT

Tracy Hope Davis, United States Trustee for Region 2 (the "United States Trustee"),

respectfully submits this objection (the "Objection") to the approval of the proposed disclosure

statement (the "Disclosure Statement") submitted by Martense New York, Inc. (the "Debtor"),

dated March 31, 2011, in support of its plan of reorganization dated March 31, 2011 (the "Plan").

For the reasons set forth below, the Disclosure Statement is deficient and does not meet the

"adequate information" standard set forth in 11 U.S.C. § 1125(a).

## I.  INTRODUCTION

The Debtor's Disclosure Statement is deficient in its current form because it contains

inadequate information concerning: 1) the Debtor's operations during its chapter 11 case and the

feasibility of the Plan, 2) the implementation of the Plan, the risk factors associated with the Plan

and the value of the Property, 3) the cash on hand as of the effective date of the Plan (the

"Effective Date") and the availability and source of future plan funding, 4) liquidation analysis,

5) post-confirmation management, 6) the means by which professional fees will be paid, 7)

preference and fraudulent conveyance actions, 8) compliance with the absolute priority rule, and

9) the Debtor's quarterly United States Trustee fee obligations, as well as various other errors,

omissions and inconsistences outlined herein.   The Disclosure Statement does not contain

"adequate information" for creditors with respect to the Plan under 11 U.S.C. §1125(a).  The

Court should, therefore, deny approval of the Disclosure Statement in its current form.  As many

of the United States Trustee's objections and comments relate to issues that are repeated in the

Plan, any amendments to the Disclosure Statement should be accompanied by corresponding

amendments to the Plan.

## II.  FACTS

1.      On October 9, 2009 (the "Petition Date"), the Debtor commenced its case by

filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  ECF No. 1.  The

Debtor filed its schedules on the Petition Date.  Id.

2.      The United States Trustee was unable to form an unsecured creditors' committee

in the Debtor's case.

3.      The United States Trustee has not appointed a trustee, and the Debtor remains in

control and possession of its assets as a debtor-in-possession under 11 U.S.C. §§ 1107 and 1108.

4.      According to the Debtor's schedules, the Debtor's sole valuable asset is an sixty-

unit residential apartment building located at 61 Martense Street, Brooklyn, NY (the "Property"),

with a scheduled value of $6.375 million.  ECF No. 1, Schedule A.

5.      On March 31, 2011, the Debtor filed the Plan and the Disclosure Statement.  ECF

Nos. 85 and 86.

6.      On April 19, 2011, New York Community Bank ("NYCB"), the Debtor's largest

secured creditor with an asserted claim of $5,838,303.67, filed an objection to the approval of the

Disclosure Statement (the "NYCB Objection").  ECF No. 90.

## III.  OBJECTION

A disclosure statement must contain "adequate information."  11 U.S.C. § 1125(b).  The

statute defines "adequate information" in general terms to mean:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in
> light of the nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the debtor, and a
> hypothetical investor typical of the holders of claims or interests in the case, that
> would enable such a hypothetical investor of the relevant class to make an
> informed judgment about the plan, . . . and in determining whether a disclosure
> statement provides adequate information, the court shall consider the complexity
> of the case, the benefit of additional information to creditors and other parties in
> interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1).

The facts and circumstances of each case govern the precise information required in a

disclosure statement.  Kirk v. Texaco, 82 B.R. 678, 681 (S.D.N.Y. 1988) (citing H.R. Rep. No.

595, 95th Cong., 1st Sess., 408-409 (1977), U.S.C.C.A.N. 1978, 5787, 6365) ("[p]recisely what

constitutes adequate information in any particular instance will develop on a case-by-case

basis"); accord In re Cardinal Congregate I, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990).  See

also In re Ionosphere Clubs, Inc., 179 B.R. 24, 29 (S.D.N.Y. 1995) (the court may require

disclosure appropriate to the circumstances of each case).

The benchmark opinion In re Metrocraft, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) cites

nineteen non-exclusive factors that courts evaluate when deciding whether a disclosure statement

contains adequate information.  See also In re Ferretti, 128 B.R. 16, 18-19 (Bankr. D.N.H. 1991)

(citing eighteen of the Metrocraft factors).  The disclosure statement must contain all pertinent

information bearing on the success or failure of the proposals in the plan of reorganization and

disclose the risks posed to creditors and equity security holders under the proposed plan of reorganization. <u>Cardinal Congregate</u>, 121 B.R. at 764.

The Court should deny approval of the Disclosure Statement. It is lacking in meaningful, necessary, and critical information and, therefore, does not meet the minimal requirements of 11 U.S.C. § 1125. <u>See</u> <u>In re Microwave Prods., Inc.</u>, 100 B.R. 376, 378 (Bankr. W.D. Tenn. 1989) (disclosure statement that lacks meaningful, necessary and critical information should be disapproved).

### A.    Operations During the Chapter 11 Case and Feasibility.

The Disclosure Statement fails to provide adequate information concerning the Debtor's operations during its chapter 11 case and the feasibility of the Plan. <u>See</u> <u>Metrocraft</u>, 39 B.R. at 568 (listing discussion of Debtor's "present condition" based on operations in chapter 11 as sixth factor). In paragraph 1, the Disclosure Statement vaguely discusses the Debtor's operations by simply providing the Debtor's, " . . . income from the building is sufficient to meet ongoing operating expenses of the building[,] to pay real estate taxes and to make the payments owed under the first mortgage." <u>See</u> Disclosure Statement, p. 4, § 1. Feasibility of the Plan is similarly summarily dispensed with the unsupported statement that, "[t]he Debtor believes that it has established its ability to fund the Plan by virtue of the fact that it has been able to make all monthly adequate protection payments to NYCB and will establish that third party funds are available to Mr. Nelkenbaum." <u>See</u> Disclosure Statement, p. 12, § VI (A). The Disclosure Statement fails to provide any reference to the Debtor's operating reports, any information regarding the Debtor's non-NYCB expenses and any information regarding any surplus income the Debtor has available each month. <u>Id.</u> This is especially important in this case since the

Debtor proposes that its five-percent payment to unsecured creditors will be made one year after the Effective Date. Without substantially more information, creditors cannot evaluate feasibility of the Plan. The Disclosure Statement should be amended to provide this information.

**B.** **Implementation of Plan, Risk Factors and the Value of the Property**.

The Disclosure Statement contains insufficient information regarding the implementation of the Plan, the risk factors associated with the Plan and the value of the Property. See Metrocraft, 39 B.R. at 568 (discussing "description of the available assets and their value" as the second factor and "information relevant to the risks posed to creditors under the plan" as the fifteenth factor). The most critical omissions are that the Debtor 1) does not disclose an appraised value of the Property, 2) does not disclose or project future carrying costs for the Property and 3) does not discuss current and projected future vacancy rates and their impact on feasibility. The Disclosure Statement should be amended to provide this information.

**C.** **Cash on Hand as of Effective Date and Availability and Source of Funds to Meet Various Obligations.**

The Disclosure Statement does not give adequate information as to 1) the amount of cash the Debtor will need on the Effective Date and at various benchmarks in the future, 2) the cash available to meet those Effective Date and future obligations, or 3) the source of the funds to meet these obligations. See Metrocraft, 39 B.R. at 568 (listing discussion of Debtor's "available assets and their value" as second factor). The Disclosure Statement gives absolutely no detail as to how the Debtor will fund its Effective Date and future obligations to NYCB, the City of New York, unsecured creditors and professionals while still meeting the carrying costs of the Property. Instead, the Disclosure Statement summarily declares that,

> The payments due under the Plan will be funded from the Debtor's on-going rental income, an through the injection of such New Value Contributions by or on behalf of Mr. Yehuda Nelkenbaum as may be necessary to fund any payments due under the Plan.

Disclosure Statement, at 10, § (v)(A).

There is, however, no disclosure, or even projection, of how much the Debtor intends to have available for Plan payments after carrying cost expenses and how much the Debtor's principal will need to contribute. This information is important for, among other reasons, a determination of feasibility of the Plan and the applicability of the new value exception to the absolute priority rule.

### D.    Liquidation Analysis.

The Disclosure Statement does not contain any liquidation analysis. See Metrocraft, 39 B.R. at 568 (listing discussion of "the estimated return to creditors under a Chapter 7 liquidation" as eighth factor). Absent a liquidation analysis, the Debtor cannot even attempt to satisfy the "best interests of creditors" test of 11 U.S.C. 1129(a)(11). This lack of proof is especially critical since the Debtor proposes to pay general unsecured non-priority creditors just five percent of their claims a year after the effective date. Accordingly, there is a real possibility that unsecured creditors would fare better in a chapter 7 liquidation.

### E.    Post-Confirmation Management.

The Disclosure Statement and Plan do not contain sufficient information regarding the post-confirmation management of the Debtor and the salary to be received by the Debtor's post-confirmation management. See Metrocraft, 39 B.R. at 568 (requiring disclosure of the "future management of the Debtor" as twelfth factor). The Disclosure Statement and Plan should be amended to fully disclose 1) who will manage the Debtor post-confirmation, 2) whether the

Debtor will use a management company, 3) the identity of the principals of any management company, and 4) the compensation that post-confirmation management will receive, either directly from the Debtor or indirectly through any management company.

**F.   Professional Fees.**

The Disclosure Statement contains insufficient information with respect to how the Debtor will pay its outstanding professional fees.   <u>See</u> <u>Metrocraft</u>, 39 B.R. at 568 (requiring estimates of attorneys' fees as twelfth factor).   In Section IV, the Debtor provides that it will owe approximately $100,000.00 in professional fees.  Disclosure Statement, p. 8, § 4.  As professional fees are a significant outstanding expense, the Disclosure Statement should be amended to provide additional information including 1) the precise amount of outstanding fees, 2) when professional fees will be paid and 3) the precise source of the funds earmarked for payment of professional fees.  Also, any arrangement with the professionals regarding payment of fees over time must be fully disclosed so that creditors can determine whether the plan is feasible.

**G.   Preference and Fraudulent Conveyance Actions.**

The Disclosure Statement contains no information with respect to the Debtor's potentially viable avoidance action recoveries.   <u>See</u> <u>Metrocraft</u>, 39 B.R. at 568 (discussing, "actual or projected realizable value from recovery of preferential or otherwise voidable transfers," as sixteenth factor).   Article 6.1 of the Plan vaguely states that

> All rights conferred under Chapter 5 of the Bankruptcy Code, including the right to pursue objections and avoidance actions, are hereby preserved for the benefit of the Debtor and/or the Reorganized Debtor.

Plan, ¶ 6.1.  The Disclosure Statement should be amended to specifically disclose 1) what efforts

the Debtor has undertaken to identify potential fraudulent conveyance and avoidance actions, 2) what potential fraudulent conveyance and avoidance actions the Debtor has identified; 3) the potential value of such actions; 4) potential defense to such actions, 5) specific reason why the Debtor has chosen not to pursue each action and 6) the Debtor's justification for preserving such actions for itself as opposed to for the benefit of creditors. <u>See</u> <u>also</u> <u>Metrocraft</u>, 39 B.R. at 568 (listing discussion of Debtor's "financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan" as fourteenth factor).

### H. Absolute Priority Rule.

The Plan provides that the Debtor's current principal, Mr. Nelkenbaum, will retain his equity interests in the Debtor post-confirmation. <u>See</u> Plan, Article 3.11. Under the absolute priority rule, 11 U.S.C. § 1129(b)(2)(B)(ii), old equity is barred from receiving any property via a reorganization plan when all senior claim classes are not paid in full. <u>In re Fur Creations by Varriale, Ltd.</u>, 188 B.R. 754, 761 (Bankr. S.D.N.Y. 1995) (citing <u>Bonner Mall Partnership v. U.S. Bancorp Mortgage Co.</u>, 2 F.3d 889, 908 (9th Cir. 1993), <u>cert. Granted</u>, 510 U.S. 1039 (1994), <u>dismissed as moot</u>, 513 U.S. 1994))); <u>In re One Times Square Associates Ltd. Partnership</u>, 159 B.R. 695, 707 (Bankr. S.D.N.Y. 1993). The Plan proposes to pay general unsecured creditors just five percent of their claims a year after the Effective Date. Accordingly, Mr. Nelkenbaum may only retain his equity interests if he can satisfy the "new value exception" to the absolute priority rule. In order to satisfy the "new value exception," the plan proponent must establish that old equity is buying shares in the reorganized entity in exchange for a contribution that is new, substantial money or money's worth, necessary for a successful reorganization and reasonably equivalent to the value or interest received. <u>In re Fur Creations by Varriale, Ltd.</u>, 188 B.R. 754, 761 (citations omitted). Unless the Debtor can satisfy the new

value exception to the absolute priority rule, the Plan cannot be confirmed. Although the Disclosure Statement discloses that Mr. Nelkenbaum will make some contribution to the reorganized Debtor, it lacks any specificity. <u>See</u> Disclosure Statement, p. 10, § V(A). The Disclosure Statement should be amended to disclose 1) the precise amount Mr. Nelkenbaum will be contributing to fund a portion of the Plan and 2) documentation of why the Debtor believes that the amount of this contribution is reasonably equivalent to the value of the interest he is receiving.

**I.      Payment of Quarterly Fees**.

The Disclosure Statement does not include any information regarding the Debtor's obligation to pay quarterly fees due both before and after confirmation. The Plan contains insufficient information regarding quarterly fees obligations. <u>See</u> Plan, Article 10.7. Both the Disclosure Statement and Plan should be amended to provide that the Debtor shall pay all pre-confirmation quarterly fees, under 28 U.S.C. §1930, plus accrued interest, under 31 U.S.C. § 3717, on the Effective Date. With respect to post-confirmation quarterly fees, the Debtors should amend the Plan and Disclosure Statement to include the following paragraph:

> The reorganized debtors shall pay all statutory fees due and payable, under 28 U.S.C. § 1930, plus accrued interest under 31 U.S.C. § 3717, on all disbursements, including plan payments and disbursements inside and outside of the ordinary course of business, until the entry of a final decree, dismissal or conversion of the case to chapter 7.

**J.      Miscellaneous Objections.**

a.      The claim of creditor MYG Trust was scheduled by the Debtor as unsecured, and the Plan treats the claim as unsecured. ECF No. 1, Schedule F.

The proof of claim filed my MYG Trust, however, indicates that it holds a secured claim. Claims Register, Claim No. 13. The Disclosure Statement should be amended to address this discrepancy.

     b.  According to both the schedules and the claims register the Debtor owes priority unsecured taxes to both the United States and New York State. ECF No. 1, Schedule E, Claims Register, Claim Nos. 8 and 11. The Disclosure Statement and Plan do not address how the Debtor will meet these obligations on the Effective Date or whether either taxing authority has consented to alternative treatment.

     c.  The Plan and Disclosure Statement are inconsistent regarding the number of liens encumbering the Property. The Plan indicated that there are two liens and the Disclosure Statement indicated three. <u>See</u> Plan, Article II and Disclosure Statement, p. 1. The Disclosure Statement or Plan should be amended to address this discrepancy.

## IV. <u>CONCLUSION</u>

For the reasons set forth in this Objection, the United States Trustee requests that the

Court sustain her Objection, disapprove the Disclosure Statement in its current form and grant

other relief as is just.

Dated: Brooklyn, New York
      April 21, 2011

                                      Respectfully submitted,

                                      TRACY HOPE DAVIS
                                      UNITED STATES TRUSTEE

By:      <u>  */s/ William E. Curtin*</u>
                                      William E. Curtin (WC-1974)
                                      Trial Attorney
                                      271 Cadman Plaza East, Room 4529
                                      Brooklyn, New York 11201
                                      Tel. No. (718) 422-4960
                                      Fax. No. (718) 422-4990