UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                             Chapter 11

MARTENSE NEW YORK INC.                             Case No. 09-48910 (CEC)

                Debtor.

-----------------------------------------------------------X

## AMENDED CHAPTER 11 PLAN OF REORGANIZATION

      MARTENSE NEW YORK INC. (the "Debtor") hereby proposes the following Chapter 11 plan of reorganization (the "Plan") pursuant to §1121(a) and other provisions of Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

### ARTICLE I

### DEFINITIONS

      Unless otherwise defined below, all capitalized terms used herein shall have the meanings assigned to them in the Bankruptcy Code. For the purposes of the Plan, the following terms shall have the meanings set forth below.

      1.1.  **"Administrative Expense Claim"** means a Claim for costs and expenses of administering the Chapter 11 case allowed under §§ 503(b) and 507(b) of the Bankruptcy Code, as approved by the Bankruptcy Court, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's property; (b) compensation for legal and other services rendered to the Debtor's estate as allowed by the Bankruptcy Court under §§ 330, 331 or 503(b) of the Bankruptcy Code to

the extent incurred prior to the Effective Date of the Plan (as defined below); and (c) all quarterly fees assessed against the Debtor's estate by the Office of the United States Trustee under 28 U.S.C. § 1930.

**1.2.** **"Allowed Claim"** means a Claim timely filed before the Bar Date to be established by the Bankruptcy Court, or which was scheduled by the Debtor without being designated as contingent, unliquidated or disputed (a) as to which no objection has been filed within the time fixed by the Bankruptcy Court or (b) as to which any objection that is filed has been subsequently settled, waived, withdrawn or denied by a Final Order.

**1.3.** **"Bankruptcy Code" or the "Code"** means title 11 of the United States Code, 11 U.S.C. §§101 *et seq.*, as now in effect or hereafter amended.

**1.4.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York.

**1.5.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of New York, and the Local Rules of the Bankruptcy Court, as applicable to the proceedings herein.

**1.6.** **"Bankruptcy Schedules"** means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information filed by the Debtor pursuant to Bankruptcy Rule 1007, as same may be amended or supplemented from time to time.

1.7. **"Business Day"** means any day, excluding Saturdays, Sundays or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

1.8. **"Claim"** means a claim against the Debtor as defined in Bankruptcy Code § 101(5).

1.9. **"Class"** means all of the holders of Claims or Interests having characteristics substantially similar to the other Claims or Interests and which have been designated as a class in the Plan.

1.10. **"Confirmation"** means approval of the Plan by the Bankruptcy Court following a hearing.

1.11. **"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.12. **"Confirmation Hearing"** means the hearing or hearings before the Bankruptcy Court at which the Bankruptcy Court will consider the Confirmation of the Plan pursuant to Bankruptcy Code § 1128.

1.13. **"Confirmation Order"** means the order of the Bankruptcy Court, in form and substance satisfactory to the Debtor confirming the Plan pursuant to Bankruptcy Code § 1129.

1.14. **"Creditor"** means the holder of a Claim against the Debtor.

1.15. **"Disbursing Agent"** means the Debtor, for purposes of effectuating distributions hereunder.

1.16. **"Disclosure Statement"** means the Disclosure Statement for the Plan of even date, together with any supplements, amendments, or modifications thereto.

1.17. **"Disputed Claim"** means any Claim as to which the Debtor has interposed a timely objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor.

1.18. **"Effective Date"** means the first business day after the Confirmation Order becomes a Final Order.

1.19. **"Final Order"** means an order entered by the Bankruptcy Court or other court of competent jurisdiction on its docket as to which (a) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or a similar rule under the Federal Rules of Bankruptcy Procedure may be filed with respect to such order.

1.20. **"Guarantors"** means the persons and entities that guaranteed the Debtor's obligations to New York Community Bank.

1.21. **"New Value Contribution"** means the additional contributions made by or on behalf of the Debtor's principal, Yehuda Nelkenbaum.

1.22. **"Person"** means any person or entity of any nature whatsoever, specifically including, but not limited to, an individual, firm, company, corporation, partnership, trust, governmental unit, joint venture, association, joint stock company, limited liability company, estate, unincorporated organization or other entity.

1.23. **"Petition Date"** means October 9, 2009.

1.24. **"Plan Documents"** means all documents, forms, lists, and agreements contemplated under the Plan to effectuate the terms and conditions hereof.

1.25. **"Priority Claim"** means all Claims that are entitled to priority pursuant to Bankruptcy Code § 507(a).

1.26. **"Real Estate Tax Claims"** mean the pre-petition Claims of the City of New York for unpaid taxes.

1.27. **"Reorganized Debtor"** means the Debtor following confirmation of the Plan.

1.28. **"Secured Claim"** shall mean a Claim secured by a lien, mortgage or security interest on the property of the Debtor's estate.

1.29. **"Secured Creditor"** shall mean the holder of a Secured Claim.

1.30. **"Unsecured Claim"** shall mean a general unsecured claim arising prior to the Petition Date for which the Claimant does not hold a valid, perfected and enforceable lien, mortgage or security interest.

1.31. **"Unsecured Creditor"** shall mean the holder of an Unsecured Claim.

1.32. "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930.

## ARTICLE II

## OVERVIEW OF THE PLAN

This Plan is predicated upon a restructuring of the mortgage debt encumbering the Debtor's property, a 67 unit apartment building with an in ground garage (the "Property") at 61 Martense Street, Brooklyn, New York. The Property is encumbered by two liens: emergency repair liens of the City of New York and a consolidated first mortgage held by New York Community Bank ("NYCB"). The mortgage is in arrears and is addressed under the Plan.

The centerpiece of the Plan is a restructuring of the first mortgage held by NYCB in the principal amount of $4,823,911.30 as of the petition date. NYCB shall retain a first mortgage lien on the Property until the restructured first mortgage is satisfied on the Maturity Date of the mortgage, February 29, 2016.

The funding for the restructured mortgage and other plan payments shall come from or be advanced on behalf of Yehuda Nelkenbaum. The payments due under the Plan will be funded from the Debtor's on-going rental income and from Mr. Nelkenbaum, in the form of the injection of such New Value Contributions as may be necessary to fund any payments due under the Plan.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS

The claims of creditors are classified below.

### Class 1: Real Estate Taxes and Emergency Repair Liens

**3.1** **Classification** - Class 1 consists pre-petition Real Estate Tax Claim of the City of New York and pre-petition and post-petition Emergency Repair Liens of approximately $207,456.00, together with applicable statutory interest.

**3.2** **Treatment** - Class 1 Real Estate Tax Claims and Emergency Repair Liens shall be paid in 20 quarterly installments commencing on first day of the month which is three months after the Effective Date of the Plan and continuing until paid in full with applicable statutory interest. The Debtor does not believe that any pre-petition real estate taxes are owed to the City of New York as NYCB advanced the amounts owed and post-petition real estate taxes have been paid by the Debtor. The Class 1 Claimant will retain its liens until its claim is paid in full.

**3.3** **Voting** – Because all real estate taxes are being paid in full with interest, the Class 1 Real Estate Tax Claim and Emergency Repair Liens are <u>unimpaired</u> and not eligible to vote on the Plan.

### Class 2: New York Community Bank Mortgage Claim

**3.4** **Classification** - Class 2 consists of the First Mortgage held by NYCB.

**3.5** **Treatment** - The Class 2 Mortgage Claim of NYCB shall be restructured under the following terms and conditions:

(a) The Debtor agrees and acknowledges that the principal balance of $4,823,911.30 remains owing to NYCB as of the Confirmation Date. This principal shall be paid as follows: interest at the non-default rate of interest of 5.875% in equal monthly installments of $24,450.00 for the first two years after the Effective Date of the Plan; then

7

interest and amortization at the non-default rate of interest based upon a thirty year amortization schedule, payable monthly at a rate of $28,535.26, until the mortgage falls due on February 29, 2016, at which time the unpaid principal balance of the mortgage will be paid in full.

(b) The Debtor shall pay pre-petition interest arrears in the amount of $291,337.03, forced placed insurance and tax advances made by NYCB together with all legal fees and costs of NYCB in connection with the litigation, bankruptcy ($281,220.53 according to the NYCB claim, subject to confirmation as to payment and reasonableness as described below) and potential settlement thereof, including the possible negotiation, drafting and execution of the settlement documents in four (4) annual payments with interest at the prime rate in effect from time to time plus three (3%) percent commencing on the first year after the Effective Date of the Plan and continuing annually thereafter with a final payment when the mortgage matures. NYCB shall provide copies of the detailed bills for such legal services and costs to the Debtor no later than twenty (20) days prior to the hearing on confirmation of the Plan. The Debtor shall have ten (10) days after receipt to object to any such bills. If the objection cannot be resolved between the parties, the Bankruptcy Court shall retain jurisdiction to determine the validity and amount of any such bill.

(c) Interest accruals of $24,450.00 per month for the period from November, 2009 through April, 2010 totaling $122,250.00 shall be paid with interest of three (3%) percent over the prime rate in effect from to time falling due on the maturity date of the mortgage.

(d) The Debtor shall pay all appraisal and other out-of pocket fees incurred by NYCB on the Effective Date of the Plan.

(e) The Debtor shall maintain real estate taxes with respect to the Property current and provide on-going proof of payment to NYCB.

(f) All notification periods and grace periods set forth in the original loan documents shall remain effective under this restructured agreement.

(g) No later than ten (10) days after entry of the Confirmation Order, the Debtor shall:

    i. execute such documents as NYCB shall reasonably request reaffirming all of the terms of the original loan documents, except to the extent amended by this Plan.

**3.6** **Voting** – Because the Class 2 claim of NYCB is being restructured, the claim is impaired and is eligible to vote on the Plan.

### Class 3: Unsecured Claims

**3.7** **Classification** - Class 3 consists of Allowed Unsecured Claims. Included in Class 3 is the claim of NCC Capital LLC which filed a spreader agreement to secure $635,000 owed to it and Castle Oil Corporation which holds a judgment of $58,358.12.

**3.8** **Treatment** - The allowed Class 3 claims of unsecured creditors, if any, shall receive a one-time lump sum payment of five (5%) percent dividend one year after the Effective Date of the Plan. The liens of record of NCC Capital LLC and Castle Oil Corporation shall be vacated pursuant to §§506(a) and 1123 of the Bankruptcy Code.

**3.9** **Voting** -Class 3 is impaired under the Plan and eligible to vote.

Case 1-09-48910-cec    Doc 98    Filed 05/10/11    Entered 05/10/11 18:00:45

### Class 4: Equity Security Holders

**3.10** **Classification** - Class 4 consists of the equity membership interests in the Debtor.

**3.11** **Treatment** - Class 4 Equity Interest shall not be affected by the Plan and the Class 4 interest holder shall continue to retain his equity interest in the Reorganized Debtor following Confirmation of the Plan. The continued retention of equity in the Reorganized Debtor by the Class 4 interest holder is permissible by virtue of his New Value Contribution.

**3.12** **Voting** - The Class 4 Equity holders is not eligible to vote because of his insider status.

### ARTICLE IV

### UNCLASSIFIED ADMINISTRATIVE EXPENSE CLAIMS

**4.1** Administrative Expenses are not separately classified under the Plan and shall be paid in full as allowed by the Bankruptcy Court. Administrative Expense Claims consist of professional fees and expenses incurred by the Debtor's counsel. Such fees and expenses remain subject to Bankruptcy Court approval after application and additional notice to creditors. All post-petition debts and obligations incurred by the Debtor in the ordinary course of business in maintaining and operating the Property shall be paid in accordance with their existing terms and conditions without formal treatment under the Plan. The claims of Gregory LaSpina who was appointed as Receiver prior to the commencement of the Chapter 11 case shall be fixed by the Court before the case is

closed. If an application for compensation is not filed before the June 1, 2011, such fees will be waived.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1** **Cash Funding.** The Plan shall be financed through a combination of rents received by the Debtor from the tenants of the Property, and such New Value Contributions as are needed to fund any payments due under this Plan.

**5.2** **Revesting of the Debtor's Property.** All property of the Debtor's estate shall revest in the Reorganized Debtor, subject to the NYCB Mortgage as restructured and reinstated hereunder, plus any statutory lien rights of the local taxing authorities.

## ARTICLE VI

## THE RETENTION OF CLAIMS BELONGING TO THE DEBTOR OR THE DEBTOR'S ESTATE

**6.1** All rights conferred under Chapter 5 of the Bankruptcy Code, including the right to pursue objections and avoidance actions, are hereby preserved for the benefit of the Debtor and/or Reorganized Debtor.

## ARTICLE VII

## RESOLUTION OF DISPUTED CLAIMS AND OBJECTIONS TO PROOFS OF CLAIM

**7.1** **Objections to Claims.** The Debtor hereby reserves the right to object or contest the allowance of any Claims for a period of 60 days after Confirmation of the Plan.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1** **Assumption of Leases**. Any existing executory contracts and/or tenant leases held by the Debtor, as landlord, are hereby deemed assumed pursuant to 11 U.S.C. §365 without the necessity of the filing of a formal Motion.

## ARTICLE IX

## RETENTION OF JURISDICTION

**9.1** **Retention of Jurisdiction**. The Bankruptcy Court shall retain jurisdiction to consider the following matters after Confirmation of the Plan:

(a) To enforce, implement, interpret or modify the Plan under applicable provisions of the Bankruptcy Code;

(b) To hear and determine all controversies, claims, causes of action and objections that may be pending at the time of Confirmation or filed thereafter, including to enforce any alleged defaults under the Plan, and such proceedings as may be necessary to determine the amount of the NYCB Mortgage Claim;

(c) To hear and determine all applications for final compensation and reimbursement of expenses; and

(d) To enter a final decree closing the bankruptcy case based upon substantial consummation of the Plan.

## ARTICLE X

## GENERAL PROVISIONS

**10.1** **Headings**. The headings in the Plan are reference purposes only.

**10.2  Contents of Confirmation Order.** The Confirmation Order may contain various equitable or injunctive provisions as may be necessary to implement or enforce the Plan.

**10.3  No payment of Disputed Claims.** This Plan contemplates the payment of Allowed Claims only. No distributions shall be made on account of any Disputed Claim(s), until such Disputed Claim(s), or any part thereof, becomes an Allowed Claim.

**10.4  Severability.** The sections of this Plan shall be severable, such that in the event one provision is held to be unenforceable, the remaining provisions shall be enforceable.

**10.5  Defaults.** In the event of a default in any of the terms hereof, which default shall continue after forty five (45) days written notice to the Debtor, and the Debtor's counsel, the creditors may take all actions permitted under Federal and State law to enforce their rights, including but not limited to the rights of NYCB under its first mortgage.

**10.6  Governing Law.** This Plan shall be governed by Federal and, where applicable, New York State law.

**10.7  Quarterly Fees.** All fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date will be paid by the Debtor in accordance therewith until the earlier of the conversion or dismissal of this case under section 1112 of the Bankruptcy Code, or the closing of the case under section 350(a) of the Bankruptcy Code.

**10.8  Closing the Case.**  Upon substantial consummation of the Plan, the Debtor shall move for a final decree to close the Chapter 11 case.

Dated: New York, New York
    May 10, 2011

                                MARTENSE NEW YORK INC.

                                By: _____
                                    Yehuda Nelkenbaum, President

**GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP**
*Attorneys for the Debtor*
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700

By: _____
    Neal M. Rosenbloom, Esq.
    A Member of the Firm