UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x

In re: Chapter 11

MARTENSE NEW YORK INC. Case No. 09-48910 (CEC)

Debtor.

---------------------------------------------------x

**SECOND AMENDED DISCLOSURE STATEMENT**
**<u>PURSUANT TO §1125 OF THE BANKRUPTCY CODE</u>**

**MARTENSE NEW YORK INC.** (the "Debtor") hereby submits this Disclosure Statement (the "Disclosure Statement"), pursuant to §1125 of Title 11, United States Code (the "Bankruptcy Code"), in connection with the Debtor's accompanying Chapter 11 Plan of Reorganization dated March 31, 2011 (the "Plan").

## I. OVERVIEW

1. **Introduction.** The Debtor owns a multi-family apartment building located at 61 Martense Street, Brooklyn, New York consisting of sixty (60) residential units and underground parking (the "Property"). The Property is encumbered by four liens: an emergency repair lien of the NYC Department of Housing and Preservation Development ("HPD"), a first mortgage held by Martense Street Capital LLC as assignee of New York Community Bank ("NYCB") a second mortgage held by NCC Capital LLC by virtue of a spreader agreement which covers the Debtor's real property and judgment liens held by Judith Grossman as Trustee of the MYG Trust and Castle Oil Corporation.

In the months before the filing of the Chapter 11 case, the Debtor became delinquent with respect to its mortgage obligations due to operating shortfalls and

inconsistent rent collections. NYCB commenced a foreclosure action to recover a principal loan balance of $4,823,911.30 together with interest and additional charges. In the context of the foreclosure action, NYCB subsequently obtained the appointment of a Receiver, Gregory LaSpina.

At the time the Chapter 11 case was filed, Mr. LaSpina was collecting rents from tenants of the Property. One of the first actions in the case was negotiating the terms of a stipulation and order which directed the Receiver to surrender possession of the Property to the Debtor and authorize the Debtor to use cash collateral. The aforesaid stipulation was dated January 21, 2010 and was so ordered by the Court on March 12, 2010. After the stipulation was ordered by the Court, the Receiver turned over all funds which he held enabling the Debtor to pay real estate taxes for the period running from July 1, 2010 through December 31, 2010, and to begin making adequate protection payments of $24,450.00 each month beginning in April, 2010 and continuing monthly thereafter through May, 2011. The Debtor has turned over management of the Property to Brenda Management Inc., which has stabilized the building so as to allow the Debtor to remain current on its obligations during the Chapter 11 case.

NYCB by motion dated June 3, 2010, commenced a proceeding before the Bankruptcy Court to vacate the automatic stay imposed under §362 of the Bankruptcy Code.

The Debtor opposed the motion and the Court after evidentiary hearings refused to grant NYCB's motion and has entered an order which fixes deadlines for the filing of a plan, disclosure statement and proceeding to confirmation. To that end, the Debtor filed a Plan with the Court preserving "cramdown" rights if NYCB did not consent to the Plan.

Thereafter, NYCB sold its First Mortgage to Martense Street Capital Inc. ("Martense Capital") and the entire complexion of the case has changed. Martense Capital advised the Debtor that it will assist the Debtor to confirm a plan based upon the sale of the Property and the payment to creditors in accordance with the priorities set forth in the Bankruptcy Code.

In that regard, the Debtor has entered into a contract of sale dated September 28, 2011 with Prospect Flatbush Estates, LLC to purchase the Debtor's Property for the sum of $6,400,000. The sale is subject to higher and better offers which may be made to acquire the Property. The Debtor will submit to the Court a separate order which approves the bidding procedures under which competitive bids may be placed to acquire the Property, approves a breakup fee of $175,000 to the Purchaser in the event that it is not the highest and best bidder for the Property and schedules a hearing to consider the sale. These events have paved the way for the Debtor to file a Second Amended Plan of Reorganization predicated upon the sale of the Property and the distribution of the sale proceeds and the Debtor's other revenues to creditors as will be hereafter described.

From the sale proceeds, the Debtor will be required to satisfy at closing, all amounts owed to the City of New York for emergency repair liens, unpaid real estate taxes, Environmental Control Board liens and other related charges which constitute senior liens upon the Property by the City of New York and its agencies along with interest owed as of the date of closing. The Debtor believes that these amounts, subject to verification by the title company will total approximately $207,000 along with statutory interest. The Debtor does not believe that any real estate tax claims are due and owing to the City of New York.

After satisfying the governmental liens on the Property, the sale proceeds shall then be utilized and applied to the amount owed on the Martense Capital claim. According to a claim filed by Martense Street's predecessor in interest, NYCB, as of March 11, 2011, an aggregate of $5,838,303.67 was owed to it based upon the principal amount of the mortgage, interest, default interest, late charges and advances made by the bank. Annexed hereto as Exhibit "A" is a copy of the claim filed by NYCB without the underlying mortgage documents. From April through May, 2011, $24,450 was paid to the Bank for adequate protection payments based upon the contract rate of interest. To facilitate this Plan, Martense Capital has agreed not to seek additional default interest, although it believes that it allowed to do so, based upon the fact that the Property has a value of $6,400,000 based upon the contract of sale. Martense Capital will seek contract interest through closing and assuming that the closing takes place at the end of November, 2011, Martense Capital would be authorized to receive an additional $146,700 of contract interest, which would result in a total claim of $5,985,003.67, which should be satisfied from the sale proceeds. The balance of the purchase price of approximately $208,000 would be applied to the next lien on the Property; held by the Class 4 creditor, Judith Grossman as Trustee of the MYG Trust or her assignee (Judith Grossman). Ms. Grossman's claim arises as a result of a judgment docketed against the Debtor on June 12, 2008. The judgment was in the sum of $300,260. The unpaid portion of the Class 4 claim will be treated as a Class 5 unsecured claim along with all other junior judgment liens and mortgages upon the Property, (i.e. liens docketed after the Judith Grossman judgment) all of which shall be vacated pursuant to §§506(a) and 1123 of the Bankruptcy Code because the value of the Property is insufficient to satisfy the liens on the Property in accordance with their priority.

To the extent that higher and better bids may be made to purchase the Property at the auction sale approved by the Court, the excess monies realized will then be utilized to satisfy the unpaid balance of the Judith Grossman claim, then the Castle Oil Corporation judgment claim ($58,358.12) and then, the second mortgage held by NCC Capital LLC ($635,000).

The Debtor believes that a nominal amount of money is owed for priority taxes owed to the City of New York, the State of New York and the Internal Revenue Service, and which do not constitute liens upon the Property. The Debtor believes that the aggregate amount of these claims will be less than $10,000.

Martense Capital has agreed to allow $100,000 of its mortgage proceeds be available to pay a pro rata distribution to unsecured creditors who would not otherwise receive any distribution in the Chapter 11 case.

The funds on hand with the Debtor will be utilized to pay priority tax claims, fees to counsel and a brokerage commission. To the extent that the funds on hand are insufficient to make those payments, it is expected that Martense Capital will make additional funds available to the Debtor so as to implement confirmation of this Plan.

**2. Voting Procedure.** In accordance with §1126(f) of the Bankruptcy Code, only classes of claims that are impaired under the Plan may vote to accept or reject the Plan. A class of claims is impaired if the Plan modifies, alters or changes the claimant's legal, equitable or contractual rights against the Debtor. In this case, Class 3 (Martense Capital), Class 4 (Judith Grossman) and Class 5 (General Unsecured Creditors) are impaired and are eligible to vote. The interests of Class 6 equity interest holder is unimpaired. Moreover, as insiders of the Debtor, the interest holders are not entitled to vote.

Ballots for acceptance or rejection of the Plan should be completed by Class 3, Class 4 and Class 5 creditors. After carefully considering this Disclosure Statement and the Plan, please indicate your vote on the enclosed ballot and return same before the voting deadline to **Goldberg Weprin Finkel Goldstein LLP, Attn: Neal M. Rosenbloom, Esq., 1501 Broadway, 22nd Floor, New York, New York 10036.**

In order to be counted, your ballot must be **actually received by Goldberg Weprin Finkel Goldstein LLP, Attn: Neal M. Rosenbloom, Esq., 1501 Broadway, 22nd Floor, New York, New York 10036, on or before _________, 2011** (the "Voting Deadline"). All forms of personal delivery of ballots including overnight delivery service, courier service, and delivery by hand are acceptable. **Facsimile and electronic transmissions are acceptable as well.** There is no need to file your Ballot with the Clerk of the Bankruptcy Court. If your ballot is damaged or lost, or if you do not receive a ballot to which you are entitled, you may request in writing a replacement by contacting Goldberg Weprin Finkel Goldstein LLP, Attn: Neal M. Rosenbloom, Esq., at the stated address.

Only actual votes will be counted. A failure to return a ballot will not be counted either as a vote for or against the Plan. If no votes to accept or reject the Plan are received with respect to a particular class, the class will be deemed to have voted to accept the Plan. If a creditor casts more than one ballot voting the same Claim before the Voting Deadline, the latest dated Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior ballots.

**3. Confirmation.** Your vote on the Plan is important. In order for the Plan to be accepted on a consensual basis, each class must accept the Plan. Acceptance is based

upon affirmative votes from each class of creditors of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims of those who actually vote.

If certain classes vote against the Plan, the Bankruptcy Court may still confirm the Plan if (a) at least one class votes to accept the Plan, and (b) the Court finds that the Plan (i) does not unfairly discriminate against the impaired class or classes voting against the Plan, and (ii) accords fair and equitable treatment to those impaired classes. The Debtor reserves the right to request a "cramdown" confirmation if any class of claims does not vote in favor of the Plan.

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan for ______________________ **at the United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Courtroom 3585, Brooklyn, New York 11201.** Any party in interest may object to confirmation of the Plan. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan, be served upon: counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, Attn: Neal M. Rosenbloom, Esq., 1501 Broadway, 22nd Floor, New York, New York 10036, on or before ____________, in the manner described in the order scheduling hearing on confirmation accompanying the Disclosure Statement. **The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement in open court.**

**4. <u>Disclaimer</u>.** The Bankruptcy Court's approval of this Disclosure Statement does not constitute an endorsement of the Plan. No representations other than those explicitly set forth in this Disclosure Statement are authorized concerning the terms of the Plan or the Debtor's assets or the extent of the Debtor's liabilities.

This Disclosure Statement contains summaries of certain provisions of the Plan, certain statutory provisions, certain documents related to the Plan, certain events in the case and

certain financial information. Although the Debtor believes that the Disclosure Statement is accurate, the terms of the Plan govern, and creditors are advised to review the Plan in its entirety.

## II. EVENTS LEADING UP TO THE BANKRUPTCY FILING

As noted above, the Debtor's decision to seek Chapter 11 relief was necessitated by a foreclosure action commenced by NYCB, after the Debtor defaulted on its loan obligations to NYCB.

## III. SIGNIFICANT EVENTS DURING THE BANKRUPTCY

Shortly after the filing of the Chapter 11 case, the Debtor entered into a stipulation with the Receiver and NYCB providing for the Receiver to account for all monies held and to turnover those funds to the Debtor. Those funds and the Debtor's additional cash flow were used to make adequate protection payments of $24,450.00 each month (5.875% of $4,823,911.30) beginning in April, 2010 and continuing monthly thereafter through May, 2011. The funds were also used to pay real estate taxes which fell due through July 1, 2011.

NYCB filed a motion to vacate the automatic stay to allow it to foreclose based upon the bank's contention that the Debtor had no equity in the Property.

After lengthy evidentiary hearings, the Court reserved decision on the motion and it was clear to the Debtor that NYCB did not meet its burden to establish that the Debtor did not have equity in the Property.

While the section of this disclosure statement entitled Overview of the Plan describes the events which have resulted in the filing of this Second Amended Plan of Reorganization, one of the keys to the Court finding that the Plan is in the best interest of

creditors is a finding that creditors will receive more under the Plan than they would receive if the case were converted to a Chapter 7 liquidation proceeding. The key to making such a finding lies in the value of the underlying Property. In the motion brought by NYCB to vacate the stay, NYCB asserted that the value of the Property did not exceed the debt that was owed to it and, that the Property had a value of approximately $4,525,000. In contrast to this appraisal, the Debtor filed its own appraisal with the Court which indicated that the value of the Property was $6.1 million.

Finally, the underlying contract of sale provides for a purchase price of $6.4 million, an amount which the Debtor believes approximates the upper end of the value of the Property. In addition, the offer is subject to higher and better bids which will give the market place the opportunity to test the contract of sale which the Debtor believes represents a very good purchase price for the Property.

## IV. THE PLAN

The Plan divides claims into six classes:

Class 1 – Real Estate Tax Claim and Emergency Repair Liens
Class 2 – Priority Claims
Class 3 – Martense Capital Mortgage Claim
Class 4 – Judith Grossman as Trustee of the MYG Trust or her Assignee
Class 5 – Unsecured Creditors
Class 6 – Equity Security Holders

Administration expense claims are not separately defined under the Plan and shall be paid in full as allowed by the Bankruptcy Court. Administrative Expense Claims consist of professional fees and expenses incurred by the Debtor's counsel projected to amount to approximately $100,000.00, exclusive of a pre-petition retainer of $34,500.00. Such fees and expenses remain subject to Bankruptcy Court approval after application and

additional notice to creditors. All post-petition debts and obligations debts incurred by the Debtor in the ordinary course of business shall be paid in accordance with their existing terms and conditions without formal treatment under the Plan.

**Class 1: Real Taxes and Emergency Repair Liens**

**Classification** – Class 1 consists of Real Estate Taxes owed to the City of New York and Emergency Repair Liens made to the Property in the approximate amount of $207,466.09. The Debtor does not believe that it owes real estate taxes or any money to any taxing authority, other than the minimum amount of franchise fees and related payments.

**Treatment** – Emergency Repair Liens and any taxes will be paid within ten (10) days after the Effective Date of the Plan.

**Voting** – Because the Class 1 Claims are being paid in full with interest, this Class is unimpaired and not eligible to vote on the Plan.

**Class 2: Priority Claims**

**Classification** – Class 2 consists of Allowed Priority Claims under §507(a)(2), (3), (4), (5), (6), (7) and (8) of the Bankruptcy Code.

**Treatment** – Holders of Class 2 Claims shall be paid in full plus statutory interest from the Petition Date if applicable, on the Effective Date.

**Voting** – Class 2 is unimpaired and is deemed to have accepted the Plan.

The Debtor believes that there are no priority claims other than tax claims, the amount of which does not exceed $10,000. The allowed tax claims will be paid with interest at the statutory rate on the effective date.

**Class 3: Martense Capital Mortgage Claim**

**Classification** – Class 3 consists of the First Mortgage Claim held by Martense Capital, in the principal amount of $4,823,911.30 as of March 11, 2011 together with interest and charges owed under the Mortgage after that date.

**Treatment** – The principal amount owed to the holder of the Class 3 mortgage totals $4,823,911.30.

According to the Debtor's calculations, a total of $5,985,003.67 will be owed to the holder of the first mortgage as of November 30, 2011. This amount consists of $5,838,303.67 as of March 11, 2011 and six months' interest ($24,450 x 6) from June, 2011 through November, 2011.

Creditors are respectfully advised that Martense Capital has agreed to provide the Purchaser with bridge financing totaling $5,380,000 with interest at 11.5% for a period of five months. Monthly interest payments of $50,000 will be paid to Martense Capital beginning one month after closing and for four consecutive months thereafter at which time the mortgage will be refinanced. The Purchaser will pay any amounts due in restructuring the mortgage to provide bridge financing.

Martense Capital has indicated that its willingness to provide bridge financing as described above is limited to the Purchaser and, that it will not commit to provide this financing to any third party which may present a higher and better offer to purchase the Property. Martense Capital will however, consider any request made by a higher and better bidder for bridge financing which may be granted or refused in the sole discretion of Martense Capital.

**Voting** – Because the Class 2 mortgage claim of Martense Capital is being restructured, the Class is impaired and is eligible to vote on the Plan.

**Class 4: Judith Grossman as Trustee of MYG Trust**

**Classification** – Class 4 consists of the judgment claim of Judith Grossman as Trustee of the MYG Trust.

**Treatment** – The Class 4 claim is based upon a judgment in the principal amount of $300,260 docketed on June 12, 2008 together with interest at 9% per annum as allowed by applicable law. The funds available after satisfying Class 1 through 3 claims and for the sale of the Property shall be paid to the extent that funds are available to satisfy and pay the Class 4 claim. Based upon the Debtor's analysis of the available funds, the Debtor will not have sufficient monies available to satisfy the Class 4 claim in full and approximately $208,000 will be available to pay the Class 4 claim; assuming that an escrow of $100,000 is released on or before one year of the Closing. Under the contract of sale for the Property, $100,000 of the sale proceeds are to be deposited into escrow for one year to insure that all apartments lease to Baron Rentals are delivered vacant one year after closing. If the apartments are delivered vacant, the $100,000 escrow amount will be available to be paid to the Class 4 creditor. If in fact the apartments cannot be delivered vacant on or before one year after closing, the escrow will be paid to the Purchaser under the contract of sale for the Property. To the extent that an amount remains owing to the Class 4 creditor after all available funds have been used to pay the claim, the balance of the claim shall constitute a Class 5 claim and be paid pro rata with all other Class 4 unsecured claims.

**Voting** – Class 4 is impaired under the Plan and eligible to vote.

**Class 5: Unsecured Creditors**

**Classification** – Class 5 consists of Allowed Unsecured Claims.

**Treatment** – The allowed Class 5 claims of unsecured creditors shall receive a pro rata dividend of $100,000 as soon as practicable after the Effective Date of the Plan. The liens of record of Castle Oil Corporation ($58,358), NCC Capital LLC ($635,000) and any other junior lien holder shall be vacated pursuant to §§506(a) and 1123 of the Bankruptcy Code. Because the value of the Property is in sufficient to pay the lien claims of Castle Oil Corporation, NCC Capital LLC and other junior lien holders, if any, will be treated as unsecured Class 5 claims.

**Voting** – Class 5 is impaired under the Plan and is eligible to vote.

According to the Debtor's records, the aggregate amount of unsecured creditors is approximately $3,040,000 as shown in its schedules. As such, unsecured creditors will receive an estimated distribution of 3% on their allowed claims.

**Class 6: Equity Security Holders**

**Classification** – Class 6 consists of the equity membership interests in the Debtor.

**Treatment** – Class 6 Equity Interest shall not be affected by the Plan and the Class 6 interest holder shall continue to retain his equity interest in the Reorganized Debtor following Confirmation of the Plan. After the Chapter 11 case is closed, the Class 6 equity holder may take steps to dissolve the Debtor under New York laws.

**Voting** – The Class 6 Equity Interest Holder is not eligible to vote because of his insider status.

## V. OTHER SIGNIFICANT PLAN PROVISIONS

**(A) Funding.** Funding for the Plan payments shall come from three sources. Income from rents is the Debtor's sole source of revenue. The payments due under the Plan will be funded from the Debtor's on-going rental income, through the sale of the Property under the Plan and from monies made available to the Debtor by Martense Capital under its first mortgage.

**(B) Distributions.** All distributions shall be made by the Reorganized Debtor to holders of Allowed Claims. The Debtor shall file objections to any disputed general unsecured claims no later than 30 days after Confirmation. No distribution shall be made with respect to a Disputed Claim unless and until the objection has been adjudicated, settled or withdrawn and become an Allowed Claim.

**(C) Executory Contracts and Unexpired Leases Deemed Assumed.** All executory contracts and tenant leases shall be deemed assumed on the Effective Date of the Plan under 11 U.S.C. §365(a) without the necessity of filing a formal notice of motion.

**(D) Retention of Bankruptcy Court Jurisdiction.** The Plan provides that the Bankruptcy Court shall retain jurisdiction following confirmation of the Plan: (i) to enforce, implement, interpret or modify the Plan under applicable provisions of the Bankruptcy Code; (ii) to hear and determine all controversies, causes of action, and motions, including to enforce any alleged defaults under the Plan, as well as any objections to claims that may be pending at the time of Confirmation or filed within 30 days thereafter; (iii) to hear and determine applications for final compensation and/or reimbursement of expenses; and (iv) to enter a final decree upon substantial consummation of the Plan.

## VI. BASIC REQUIREMENTS FOR CONFIRMATION OF THE PLAN

While §1129(a) of the Bankruptcy Code lists a number of findings that need to be made prior to Confirmation, three of the requirements are worth highlighting for purposes of the Disclosure Statement:

### (A) FEASIBILITY OF THE PLAN

As a prerequisite to confirmation, Bankruptcy Code §1129(a)(11) requires that the Debtor, as proponent of the Plan, demonstrate its ability to fund the Plan and establish that confirmation is not likely to be followed by the need for further financial reorganization or restructuring. Since the Plan contemplates selling the Property, this provision of §1129 would have limited applicability in the Debtor's case.

### (B) BEST INTERESTS OF CREDITORS TEST

In the event of lack of unanimous consent, the Plan must also be in the "best interests of creditors". This is a legal term of art which requires that the Plan provides a dividend to the class of creditors that vote against the Plan, which is equal to or greater than the distribution; those creditors would realistically receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

The Debtor believes that confirmation of the Plan meets the best interest of creditors test since conversion of the Debtor's case would likely prompt a forced sale of the Property, in which event it is unlikely that the Class 5 unsecured creditors would receive any dividend whatsoever.

During the pendency of the Chapter 11 case, NYCB brought on a motion to vacate the automatic stay imposed under §362 of the Bankruptcy Code. Evidentiary hearings were conducted before the Court for two days and the Court accepted into evidence an appraisal

by NYCB's appraiser, Peter L. Zachary & Associates, which claimed that the value of the building was $4,525,000.00. The Debtor filed an appraisal with the Court alleging that the value of the Property is $6,100,000. In the event of a liquidation, the following amounts would have to be paid before any distribution was paid to unsecured creditors:

| | | |
|---|---|---|
| Principal amount of NYCB mortgage, interest and charges through 3/11/2011 | $ | 5,838,303 |
| Emergency repair liens | $ | 207,000 |
| Judith Grossman (without interest) | $ | 300,260 |
| Estimated legal fees owed to Debtor's attorney in Chapter 11 case | $ | 100,000 |
| Priority Taxes | $ | 10,000 |
| Chapter 7 Trustee fees and expenses | $ | 50,000 |
| Transfer taxes and expenses of an anticipated sale ($6,400,000 x .03) | $ | 192,000 |
| Additional Secured Claims (Castle Oil $58,358.00 and NCC Capital $635,000 without interest) | $ | 693,358 |
| **TOTAL** | $ | 7,390,921 |

These amounts do not include additional default interest after March 11, 2011 or the attorneys' fees incurred by NYCB in the motion to vacate the stay and multi-day evidentiary hearing. These amounts could be claimed by Martense Capital as assignee of NYCB.

Moreover, in a distress sale, the Debtor does not believe that the fair market value of the property would be paid. As such, the Debtor does not believe that any monies would be available to pay a distribution to unsecured creditors outside of a plan, which is to be funded by a "carve out" by the Martense Capital.

Finally, the Plan contemplates that prior to confirmation, an auction sale will be held where third parties will have the opportunity to make higher and better bids to acquire the Property. The Debtor believes that the Property is being sold for an amount which is at the peak of the fair market value of the Property however, that belief will be tested through the auction sale process which will enable third parties to better the offer made by the purchaser to acquire the Property.

## VII. MISCELLANEOUS

The Debtor's Sole Stockholder and President, Mr. Yehuda Nelkenbaum, will continue to own the Debtor's equity post-confirmation. Mr. Nelkenbaum will not be paid a salary by the Debtor. Mr. Nelkenbaum will take steps to wind down the Debtor's affairs after entry of a final decree.

The Debtor does not believe that there are any preference or fraudulent conveyance actions to be pursued on behalf of the estate. In July of 2009, a Receiver was appointed in the mortgage foreclosure action brought by NYCB. The Chapter 11 case was filed on October 9, 2009. In addition, shortly after the Debtor acquired the Property, there was a fire at the premises, which resulted in a rent strike. As a result of the rent strike, almost from the time the property was purchased, funds were needed to meet obligations of the Debtor, and those funds were advanced by Mr. Nelkenbaum. These conditions are now long behind the Debtor and its operations have been stabilized.

The fees owed to the Debtor's counsel, Goldberg Weprin Finkel Goldstein LLP, as fixed by the Court pursuant to the provisions of the Bankruptcy Code shall be paid from the cash maintained by the Debtor after Confirmation of the Chapter 11 case. It is anticipated that the fees will be paid at or about the time the Chapter 11 case is confirmed.

The Debtor has paid its quarterly fees owed to the U.S. Trustee program. It will continue to do so until a final decree is entered in the Chapter 11 case.

Dated: New York, New York
October 7, 2011

**MARTENSE NEW YORK INC.**

By: ______________________
Yehuda Nelkenbaum

**GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
*Attorneys for the Debtor*
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700

By: ______________________
Neal M. Rosenbloom
A Member of the Firm

H:\Dominique\word\CLIENTS\martense (#NELYE 28475)\Second Amended Disclosure Statement (9-12-11).doc